# Wytheville.

## HATTIE E. PERKINS V. DIRECTOR GENERAL OF RAILROADS (ATLANTIC COAST LINE RAILROAD).

### June 15, 1922.

1. CROSSINGS—*Contributory Negligence—Verdict Contrary to the Evidence—Case at Bar.*—In the instant case, an action for injuries at a crossing, the primary negligence of defendant in failing to give the statutory warnings and in violating an ordinance as to the speed of the train was clearly established, and all the conflicts in the testimony were settled adversely to the defendant by the verdict of the jury for the plaintiff. The verdict was set aside by the lower court as being contrary to the evidence and without evidence to support it, on the theory that the plaintiff's "seeing and hearing the train was contemporaneous with the collision," and that her negligence in failing to see and hear sooner was the supervening and proximate cause of her injury.

   *Held:* That, from the evidence, the jury might have found that the plaintiff's horse was within a few feet of the track before the train could have been seen or heard; that if her seeing and hearing had been contemporaneous with the collision, there would have been no time for her to have attempted to pull the horse back from the track, and no time for her to tell her son to get out and for him to obey and run back several feet, which facts were established by the evidence; consequently, the action of the lower court was error.

2. CROSSINGS—*Contributory Negligence—Duty of Person Approaching Crossing—Case at Bar.*—Plaintiff, in an action for injuries sustained by her at a crossing, had no right, of course, to go blindly on the track, or to depend entirely on the gong at the crossing, or on signals from the bell and whistle which it was the duty of the defendant's employees to give, or on the slow rate of speed at which the train would have been running if it had obeyed the ordinance. But that the gong might be expected to ring, that it was the duty of the defendant to give warnings at the crossing, and that the train ought to have observed a speed of six miles an hour, were circumstances for a jury to consider as bearing very materially upon the question of the care and caution encumbent upon and exercised by her at the time.

3. CROSSINGS—*Contributory Negligence—Duty of Person Approaching Crossings—Gates, Gongs, Reduced Speed and Warnings.*—While the erection of gates, gongs, or other devices at highway or street

crossings to warn travelers of approaching trains does not excuse a traveler at such crossings from exercising ordinary care and caution, yet the same degree of care and caution is not required of the traveler where he is invited to cross by an open gate or silent gong as is required of him where there is no such invitation. In the latter case the question of negligence is peculiarly one for the consideration of the jury, and this rule applies equally to the conduct of a traveler at a crossing where reduced speed and timely warnings are reasonably to be expected.

4.  CROSSINGS—*Contributory Negligence—Precautions to be Taken by Traveler—Question for Jury—Case at Bar.*—In an action for injuries at a crossing, according to the testimony for plaintiff, she could first see the track, after passing a hill to her left, when she was within about thirty feet of the crossing. Her horse's head was then some twelve feet or more nearer the track. If, as she testified, and as might well be true in view of the high speed of the train, it was not then in sight and she continued to look and listen as she proceeded, and saw no train until her horse was too far along for her to stop and get out of the way, it cannot be said that as a matter of law she was guilty of contributory negligence. That was a question for the jury to determine.

5.  CROSSINGS—*Contributory Negligence—Section 6092 of the Code of 1919 Requiring Statement in Writing by Defendant of its Reliance on its Defense of Contributory Negligence.*—Defendant, in the instant case, an action for injuries sustained at a crossing, failed to comply with section 6092 of the Code of 1919, and was thus restricted to the plaintiff's evidence as to the defense of contributory negligence, and deprived of the benefit of any of its own evidence in that particular. This, however, was not material, because upon the evidence as a whole, even including that of the defendant, the contributory negligence of the plaintiff appeared to have been clearly a question for the jury, who found a verdict for plaintiff.

6.  PHOTOGRAPHS—*Photograph's Weight as Evidence.*—In the instant case, much reliance was placed by the defendant upon photographs introduced in evidence by it. Some of these photographs, with the evidence explaining them, tended strongly to support the defendant's theory of the case. They were not taken, however, at the same season of the year as that at which the accident occurred, and necessarily depended for their accuracy as to locations, distances and other particulars, upon human testimony. They were not entitled to more weight than other evidence for the defendant in conflict with that relied upon by the plaintiff.

*Held:* That the credit to be given the photographs as proof had to be settled by the jury.

. Error to a judgment of the Hustings Court of the city of Petersburg, in an action of trespass on the case. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*R. H. Mann* for the plaintiff in error.

*Mann & Townsend* and *Wm. B. McIlwaine,* for the defendant in error.

KELLY, P., delivered the opinion of the court.

This is an action by Mrs. Hattie E. Perkins against the Director General of Railroads for personal injuries sustained by her in a collision between a horse and buggy which she was driving and one of the Atlantic Coast Line Railroad passenger trains. The jury rendered a verdict for the plaintiff, assessing the damages at $5,000, but the trial court, on motion of the defendant, set the verdict aside, and, pursuant to the provisions of section 6251 of the Code, entered final judgment for the defendant. To that judgment this writ of error was awarded.

The accident occurred in the daytime at a railroad crossing on Hawk street in the city of Petersburg. To fix the points of the compass approximately, it may be said that at the crossing Hawk street runs east and west and the railroad north and south. The plaintiff was driving west on Hawk street and the train was going north. A few minutes prior to the accident the plaintiff, who was familiar with the situation at the crossing, drove along Hawk street from the east and stopped seventy-six feet from the east rail of the track. From that point she sent her twelve-year old son, who accompanied her, with a message to her husband, who was on the other side of the track at work in a manufacturing plant. She waited just where she had stopped until the little boy returned,

and from that position she could see a train, if one
should be coming from the south, as it emerged from
the mouth of a cut to her left about 800 feet in a
straight line from her, and about 817 feet south of the
crossing.   If she had gone any further west and
stopped, unless she had gone so far that the horse's
head would have been within a few feet of the rails,
her view would have been cut off by an intervening
bank or hill on the left side of the street.   She remained
in that position, seventy-six feet from the track, look-
ing and listening all the while for a train, until she saw
her son coming back.   As he reached the crossing she
called to him to look for a train, and he looked and
listened from a point in the center of the track, saw
and heard none, and answered, "All right, mama."
He came on at once, got into the buggy, tucked a lap
robe around his feet as a protection against the drizzling
rain which was falling, and they then started ahead to
make the crossing.   The horse was moving in a swift
walk, and they continued to look and listen for a train.
After passing the bank or hill on her left and at a
distance of about thirty feet from the nearest rail,
the plaintiff could have seen a train from the south
about 400 feet away.   The track in that direction
from the crossing curved to the left as it ran back
to the cut above mentioned, and her view would have
gradually extended to the cut as she got nearer the
rails.   According to her testimony she continued to
look and listen, but neither saw nor heard a train
until her horse was about to stop on the track.   It
is not possible to say certainly just where the train
was when she first realized its approach.   The defend-
ant contends that it was right at her side.   A fair
view of the evidence as a whole, however, is that it
was some distance away.   She and several other

witnesses, including some introduced by the defendant, testified that she tried to pull the horse back from the track before she was struck, and both she and her son testified that after they saw the train she called to him to get out of the buggy, that he did get out after disengaging his feet from the lap robe, and ran back six or seven steps before the accident occurred. It is true that at one point in her testimony she says that the train was right on her when the emergency whistle blew, and that she saw and heard the train all about the same time, but the evidence as a whole demonstrates that this part of it cannot be construed literally. The defendant's witness, Grigg, a yard conductor, who saw the accident, testified that the emergency whistle was blown just after the engine "popped around that curve, right at the distance, I suppose, of the switch stand" (the switch stand being several hundred feet from the crossing); and this is not only consistent with a fair interpretation of the testimony of the engineer of the train, but with the undisputed fact that after the plaintiff saw and heard the train, time enough intervened for her to make an effort, observed by many witnesses, to pull the horse back, and for her son to throw off the lap robe, get out of the buggy and run back six or seven steps to the rear before the accident actually happened.

These further material facts, although in some particulars disputed by the defendant, were supported by testimony on behalf of the plaintiff which warranted the jury in believing it to be true:

The whistle was not blown, the bell was not rung, and no other warning of the train's approach was given except the emergency alarm, sounded after the engineer saw that the accident was about to happen.

The railroad authorities, although not required

to do so by any ordinance of the city, had placed at the crossing an automatic gong intended to warn pedestrians and drivers of vehicles when trains were approaching. This gong was then and had been for some days out of order, and it failed to work on this occasion.

There was an ordinance of the city providing that trains should not cross any street at a greater rate of speed than six miles an hour. This train was running at the rate of about forty miles an hour.

The order of the court shows that the verdict was set aside and judgment rendered for the defendant solely on the ground that the finding of the jury was contrary to the evidence and without evidence to support it. We are of opinion that this was error.

[1, 2] The primary negligence of the defendant is clearly established by the plaintiff's evidence, and all the conflicts in the testimony were settled adversely to the defendant by the verdict. This was fully appreciated and recognized by the learned judge of the trial court, whose written opinion, while not a part of the record, has been furnished to us by counsel. The opinion shows that the decision below was reached on the theory that the plaintiff's "seeing and hearing the train was contemporaneous with the collision," and that her negligence in failing to see and hear sooner than she did was the supervening and proximate cause of the injury. From what has already been said, it will be seen that we do not think this theory is necessarily sustained by the evidence. Upon the contrary, the jury might well have found that the plaintiff's horse was within a few feet of the track before the train could have been seen or heard, and that when the plaintiff did see or hear it, or both, it was still some distance away, though her horse was

then just about to step on the track. If her seeing
and hearing had been contemporaneous with the
collision, there would have been no time for the
witnesses to see her, as they did, attempting to pull
the horse back from the track, and no time for her
to tell the boy to get out and for him to obey and run
back several feet, as he undoubtedly did, before the
collision occurred. She did not have the right, of
course, to go blindly on the track, or to depend entirely
on the gong at the crossing, or on signals from the
bell and whistle which it was the duty of the defendant's
employees to give, or on the slow rate of speed at
which the train would have been running if it had
obeyed the ordinance. But that the gong might be
expected to ring, that it was the duty of the defendant
to give warnings at the crossing, and that the train
ought to have observed a speed of six miles an hour,
were circumstances for a jury to consider as bearing
very materially upon the question of the care and
caution encumbent upon and exercised by her at the
time. As said by Judge Buchanan, in delivering the
opinion of this court in *Kimball & Fink* v. *Friend*,
95 Va. 125, 140, 27 S. E. 901, 904:

[3] "The erection of gates, gongs, or other devices
at highway or street crossings to warn travelers of
approaching trains does not excuse a traveler at such
crossings from exercising ordinary care and caution.
And while courts and text writers differ as to the
degree of reliance that may be placed upon the invita-
tion which an open gate or silent gong gives to the
traveler to cross, they generally, if not universally,
hold that the same degree of care and caution is not
required of him, as if there was no such invitation.
The question of negligence in such a case is peculiarly
one for the consideration of the jury."

The rule as to a silent gong, stated in the foregoing quotation, applies equally as well to the conduct of a traveler at a crossing where reduced speed and timely warnings are reasonably to be expected. See *Va. Ry. & P. Co.* v. *Oliver, post* p. 342, 112 S. E. 841, decided at this term; also *Wilmouth's Adm'r* v. *Southern Ry. Co.*, 125 Va. 511, 520, 99 S. E. 665.

[4] According to testimony introduced for the plaintiff, she could first see the track, after passing the hill to her left, when she was within about thirty feet of the crossing. Her horse's head was then some twelve feet or more nearer the track. If, as she testifies, and as may well be true in view of the high speed of the train, it was not then in sight and she continued to look and listen as she proceeded, and saw no train until her horse was too far along for her to stop and get him out of the way, we cannot say that as a matter of law she was guilty of contributory negligence. That was a question for the jury to determine. They did determine it in her favor upon what we regard as sufficient evidence to warrant their verdict, and the plaintiff was entitled to a judgment accordingly.

[5] It should, perhaps, be added, that the defendant failed to comply with section 6092 of the Code, and was thus restricted to the plaintiff's evidence as to the defense of contributory negligence, and deprived of the benefit of any of its own evidence in that particular. See *Payne, Director General* v. *Brown, ante* p. 222, 112 S. E. 833, decided today. We have not regarded this as a very material point in the case, however, because upon the evidence as a whole, even including that of the defendant, the contributory negligence of the plaintiff appears to have been clearly a question for the jury.

[6] Much reliance was placed by the defendant upon certain photographs introduced in evidence by it. Some of these photographs, with the evidence explaining them, tend strongly to support the defendant's theory of this case. They were taken, however, in the winter time, in the absence of foliage and grass, shown to have materially affected the situation when the accident occurred in June. Moreover, they necessarily depended for their accuracy as to locations, distances and other particulars, upon human testimony, and were not entitled to more weight than other evidence for the defendant in conflict with that relied upon by the plaintiff. The credit to be given them as proof had to be settled by the jury. *Spencer* v. *Looney,* 116 Va. 767, 781, 82 S. E. 745; 3 Jones on Ev., sec. 411, p. 61.

The judgment complained of will be reversed, and this court will enter a final judgment in favor of the plaintiff for the amount of the damages fixed in the verdict of the jury.

*Reversed.*