HAZEL PENLEY *vs.* TEAGUE & HARLOW CO.

Androscoggin.     Opinion February 10, 1928.

*The admission or rejection of photographs lies largely within the discretion of the presiding justice, and, in absence of abuse of discretion, exceptions do not lie.*

*Mortality tables are admissible if satisfactory to the court as to their authenticity by its own knowledge or upon evidence.*

*In a case involving injuries of a temporary nature, expectancy of life would not be an element to be considered, hence the admission of mortality tables would be error, but where the injuries are shown to be permanent in their character, it is proper to consider the probable expectancy of life, and mortality tables are admissible.*

Upon the contention as to the defendant's negligence and of lack of contributory negligence on the part of the plaintiff the jury decided in favor of the latter. The evidence was conflicting but we cannot say that the verdict upon these questions was manifestly wrong, but the damages were plainly excessive.

On exceptions and motion for new trial by defendant. An action to recover for personal injuries sustained by plaintiff resulting from being struck while upon a public street crossing in Lewiston by an automobile driven by defendant's agent and servant. Defendant excepted to the admission of photographs and mortality tables. The

jury returned a verdict for plaintiff for $7,500, and defendant filed a general motion. Exceptions overruled. Motion granted unless remittitur filed. The case fully appears in the opinion.

*Clifford* & *Clifford*, for plaintiff.

*Ralph W. Farris*, for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, BASSETT, PATTANGALL, JJ.

PHILBROOK, J. The plaintiff, a pedestrian upon one of the public street crossings in Lewiston, was struck by an automobile driven by the defendant's agent and servant, resulting in damages for which she recovered a verdict of $7500. The case is before us on exceptions and motion for a new trial.

Three elements appear in the bill of exceptions. The first exception was waived in the argument before the law court. The second was with reference to the admission of photographs of the plaintiff, and the third the admission of mortality tables to show the expectancy of life of the plaintiff.

ADMISSION OF PHOTOGRAPHS. Counsel for the defendant objected to the admission of two photographs of the plaintiff, alleging that the photographs were offered without identifying them or laying the proper foundation, thereby barring counsel for the defendant of the privilege of questioning the photographer who took the photographs; also on the ground that they were not original evidence, but secondary evidence, and would be prejudicial to the defendant's case where the subject of the photographs was in court and before the jury; also that the photographer, who took the pictures was not present at the trial and that the proper foundation had not been laid to offer the photographs. In *Rodick* vs. *Maine Central Railroad Co.*, 109 Maine, 530, our court has said, "This question of the admissibility of photographs in evidence has been several times considered by this court and the rule of practice in this State has been firmly established. Their admission or rejection lies largely within the discretion of the presiding Justice and the exercise of that discretion, unless the court finds the facts such as to show an abuse of discretion, is not the subject of exception. Whether it is sufficiently

verified, whether it appears to be fairly representative of the object portrayed and whether it may be useful to the jury, are preliminary questions addressed to him and his determination thereon is not open to exceptions." See also *State* v. *Jordan*, 126 Maine, 115. A careful examination of the entire record fails to disclose abuse of discretion on the part of the presiding Justice and this exception is therefore overruled.

ADMISSION OF MORALITY TABLES. This constitutes the ground of the third exception presented by the defendant. During the progress of the trial counsel for the plaintiff produced a copy of Leighton's Probate Practice, and read into the record, from the mortality tables therein, the expectancy of life of the plaintiff. Counsel for defendant objected on two grounds; (a) that the tables were not shown to be of standard authority; (b) that the expectancy of life was not material or relevent in the case at bar owing to the fact that the plaintiff had not proved to a reasonable certainty any future disability, and that the admission of these tables was prejudicial to the defendant's case.

In some courts it is said that such tables are admissible after proper preliminary proof of their authenticity and standard quality. But the general weight of authority is to the contrary and permits the introduction of such tables as are satisfactory to the court. The court may or may not require such preliminary proof, depending upon whether of its own knowledge it is satisfied, or whether it desires evidence to satisfy itself of the authenticity of the tables, *Keast, et al* vs. *Santa Ysbel Gold Mining Co.* (California), 68 Pac. Rep. 771.

In a note following *Ruehl* vs. *Lidgerwood Rural Telephone Co.,* (North Dakota) Am. Ann. Cas. 1914 C., 680, supported by numerous authorities, it is stated that courts will take judicial notice of standard mortality tables is now a well settled rule of evidence. The tables found in Leighton's Probate Practice are the so-called "Combined Experience Tables" and have been in general use, and recognized by courts as standard for many years. We, therefore, see no error on the part of the trial court in permitting these tables to be read, so far as any element of standard quality is concerned.

In an action to recover damages occasioned by the negligent act of a defendant, if the injuries received are of a temporary nature it is quite obvious that expectancy of life is not an element to be con-

sidered and in such cases admission of mortality tables for the purpose of showing the probable expectancy of life of the plaintiff would be error.

At this point it should be observed that there is a wide difference between permanent injury and total disability. This fact was recognized in *O'Brien* vs. *White and Company*, 105 Maine, 308, where the plaintiff, through the negligent act of the defendant, suffered loss of a right leg and the ends of two fingers of his left hand, by necessary amputation. The court there said "But he is not helpless, nor totally disabled for labor, for there are many occupations which can be pursued by persons having lost one leg and the partial use of the left hand." And so in many instances a plaintiff may suffer a permanent injury even though not totally disabled. Keeping this distinction in mind we proceed to the question of introduction of mortality tables when a plaintiff has sustained a permanent injury.

The rule stated in 17 C. J. 873, and supported by a long line of decided cases, is that in estimating damages, where the injuries are shown to be permanent in their character, it is proper to consider the probable expectancy of life of the plaintiff, and for this purpose standard life and mortality tables are admissible. The Federal Court, in *Whelan* v. *New York, L. E.* & *W. R. Co.*, 38 Fed. 15, states the rule to be that in ascertaining the damages for impaired ability to earn a livelihood, standard life and annuity tables are competent evidence to be considered. The same court, in *Colusa Parrot Mining Co.* vs. *Monahan*, 162 Fed. 276, says that it is not error to admit evidence, upon the question of damages, as to the plaintiff's expectancy of life according to the life tables, and in respect to the amount required to produce him an annuity for such life term equal to the difference between the amount which he would have earned each year if he had not been injured, and that which he could earn in his injured condition. Thus it will be seen that the Federal Court rule is somewhat broader than the general rule above stated but is not necessarily in conflict with that rule.

In *Banks* vs. *Braman*, 195 Mass. 97, 80 N. E. 799, it was held that where the plaintiff's contention was that his injury was permanent it was proper, if not necessary, for the jury in estimating the amount of compensation to take into consideration the probable duration

of his life; and on that question there can be no doubt that standard mortality or life expectancy tables would have been admissible.

Many other cases might be cited in support of the general rule already stated but we have no hesitancy in saying that the admission of the mortality tables in the case at bar was proper providing any of the injuries suffered by the plaintiff were permanent and would in any degree permanently affect her earning capacity.

We therefore turn to the record to ascertain whether the plaintiff suffered any injuries which were permanent and by reason of which her earning capacity might be reduced.

In her declaration the plaintiff alleges that she was thrown to the ground, and dragged over the surface of the highway whereby she received multiple contusions and abrasions; tearing and lacerating the flesh of her face, nose, chin, lips, and eyes, and causing soil, dirt, gravel and other substances to be ground into the tissues of her face, whereby she became permanently injured and disfigured.

From the medical testimony it appears by statements of reputable physicians, called by the plaintiff, that the marks upon her face are permanent. Three physicians called by the defendant also testified that the scars upon and disfiguration to her face are permanent.

At the time of the accident the plaintiff was working in a doctor's office but at the same time was pursuing the study of voice and piano and was giving instruction in both these branches to various pupils. She had been pursuing the study of music for about ten years. She claimed that she had made marked progress and received liberal patronage as a teacher, and that the disfigurement of her face rendered her personal appearance unattractive to such an extent as to affect her popularity as a teacher and her ability to obtain and retain pupils.

The charge of the presiding justice is not made a part of the record. No exceptions thereto are presented and we may assume that proper instructions were given. With those instructions the jury must have found that the disfiguration was permanent and that the injuries received diminished her earning capacity. Under the general rule of admission of mortality tables above stated we hold that their admission here was proper and this exception is overruled.

MOTION. Upon the contentions as to the defendant's negligence and the lack of contributory negligence on the part of the plaintiff

the jury have decided in favor of the latter.    The evidence was con-
flicting but we are not prepared to say that the verdict of the jury
upon the question of liability was manifestly wrong.    We do feel that
the damages awarded were excessive and plainly so.    In such a case
the sympathy of a jury might be easily aroused and even to such an
extent as to warp their judgment.    It is the opinion of the court that
the damages should not exceed $3500.

The mandate will therefore be:

> *Exceptions overruled.*
> *If plaintiff remits all of the verdict in excess*
> *of $3500 then the motion shall be overruled,*
> *otherwise motion for new trial granted.*