## HAVEN v. SNYDER.

[No. 14,085. Filed May 15, 1931. Rehearing denied August 13, 1931.]

*Claude Cline* and *M. J. O'Malley*, for appellant.

*Arthur H. Sapp, John V. Sees* and *Burr H. Glenn*, for appellee.

CURTIS, J.—Appellant, Frank R. Haven, brought this action against appellee, Roy V. Snyder, for damages for personal injuries alleged to have been sustained by him by reason of a collision between appellee's automobile and the automobile owned and driven by appellant. Trial was had by jury, which rendered a verdict in favor of the defendant, and, from a judgment thereon, appellant appealed.

Appellant filed a complaint in two paragraphs, but the first paragraph was dismissed pending a ruling on a demurrer thereto, and a demurrer to the second paragraph was overruled. After the introduction of some evidence, and during the progress of the trial, appellant was permitted to file a third paragraph of complaint. Appellee filed answer in general denial to each of the second and third paragraphs of complaint upon which trial was had.

The second paragraph of appellant's complaint alleges, in substance, as follows: That plaintiff (appellant) owned a Dodge touring car, which, on the night of August 12, 1928, at about 11 o'clock p. m., he was driving in a northerly direction at a point about 500 feet south of the intersection of the highway which crosses state highway No. 24, at what was formerly the town of Mahon; that defendant was the owner and driver of a Paige sedan and was driving in a southerly direction on the same highway at the same time and place; that appellant's car was being driven at about 30 miles per hour in a northerly direction on the right side of the road in a careful and prudent manner at a point south of Mahon; that appellee operated his car in a southerly direction and that appellee "negligently and

carelessly swerved his car to the left and to the left of the center of said highway over into and upon the car driven by plaintiff; thereby causing plaintiff's car to be damaged and causing plaintiff to lose control of his car, which caused the car to swerve to the left and run across the highway and into a ditch on the west side of the highway." It is further alleged that, as a result of appellee's car colliding with appellant's car, appellant received certain injuries to his person (which he fully describes) and for which he asks damages. The third paragraph is substantially similar to the second, except it is alleged that Leonore Snyder was driving appellee's car at the time the collision occurred; that Leonore Snyder is the wife of Roy V. Snyder, appellee, owner of the Paige sedan, and that Leonore Snyder was driving the car as the servant and agent of Roy Snyder, with his knowledge and consent, and under his direction.

The only error relied upon for reversal is that the court erred in overruling appellant's motion for a new trial, which contains the following grounds: (1) The verdict of the jury is not sustained by sufficient evidence; (2) the verdict of the jury is contrary to law; (3) the court erred in admitting in evidence, over the objection of the plaintiff (appellant), certain evidence consisting of certain photographs; and (4, 5 and 6) the court erred in giving and refusing to give certain instructions.

During the progress of the trial, appellee, over objection of appellant, introduced in evidence certain photographs. The photographs were pictures of scratches on the pavement purported to have been caused by the collision of the two cars. These photographs, before being introduced and received in evidence, were identified and verified by William Ricket, who testified, in substance, as follows: That he was a photographer

and that he had practiced photography for about 20 years in Huntington; that he did interior and exterior work; that, on August 14, 1928, he took photographs of a scene of a certain accident which occurred on August 12, 1928, near the town of Mahon; that he observed indications of there having been a wreck or collision between cars in the way of marks on the side of the road showing where cars had gone into the ditch; that there was broken glass there; that he was familiar with the road and the scene the photographs represented at and prior to August 14; that there was nothing to indicate a change in the place between August 12, and the time the picture was taken; that the road in the background of Exhibit A is the road leading to Fort Wayne; that Exhibit A is a true and accurate photograph of the place described; that the camera was placed on the southeast looking north and west; that Exhibit B is a true and accurate photograph of the place described; that he (the witness) examined the road at the point of the accident and found scratches and marks on the road; that the scratches started about 16 and 18 inches west from the center, going diagonally across the pavement towards the south and east; that there were some light gray marks in a straight line, but just short and long marks running diagonally across the pavement; the marks were easily visible to the eye; they were just simply scratches not below the surface; they were from six inches to two inches in length. He further testified that, before taking the photographs, he put some chalk marks over the gray marks; that he placed a circle where the marks started in the center of the road; that he put the chalk in the marks so the marks would be visible to the camera; that the scratches were a lighter gray than the cement; that sometimes these figures photographed nearly alike.

Frank Robbins, a witness in behalf of the appellee,

testified that he was at 'the scene of an automobile accident August 13, 1928, a short distance west of Mahon on state road 24; that he saw marks on the pavement— foot and half from center of the road on right side of center coming toward Huntington—made a circle to left side of road and left pavement, and tracks went down over bank; saw pieces of broken glass on pavement close to where these marks started. He identified Exhibit B as being a correct representation of the scene he saw that day and that the lines in the photographs were exactly as he saw marks on pavement.

Appellant argues that the photographs above referred to were incompetent for the reason that such photographs are "self-serving and have the effect of hearsay evidence; that they represent a theory of appellee and present a tableau effect and magnify the evidence of the witness and give undue prominence to the same; that the same were misleading to the jury; that there was a sharp conflict in the evidence of other witnesses as to the place of the collision, and, therefore, their introduction had the effect of confusing the jury."

The use of photographs as conveying a witness' pictured expression of data observed by him is sanctioned beyond question. Photographs, like maps, models, diagrams and other evidence, are subject to certain restrictions, regulations, and limitations which may affect their admissibility. 2 Wigmore, Evidence §792. It is a well-established rule, applied in everyday practice in courts, that diagrams and maps illustrating the scenes of a transaction, *and the relative location of objects,* if proved to be correct, are admissible in evidence, in order to enable the courts or jury to understand and apply the established facts to the particular case. It is difficult to see why a picture representing the location of objects is not likewise admissible when properly verified. It has been held repeatedly that

the admission or rejection of photographs in evidence is a preliminary question and lies largely within the discretion of the trial court, and its discretion will not be disturbed unless an abuse of such discretion is shown. *Penley* v. *Teague & Harlow Co.* (1928), 126 Me. 583, 140 Atl. 374; *Keating* v. *Hession* (1930), 172 N. E. (Mass.) 111; *Gose* v. *True* (1924), 197 Iowa 1094, 198 N. W. 528; *Hassam* v. *Safford* (1909), 82 Vt. 444, 74 Atl. 197; *Rodick* v. *Maine Central R. Co.* (1912), 109 Me. 530, 85 Atl. 41; *DeForge* v. *New York, etc., R. Co.* (1900), 178 Mass. 59, 59 N. E. 669, 86 Am. St. 464. The question of accuracy and the assistance of a photographer to the jury is within the sound discretion of the trial court. *Eldredge* v. *Mitchell* (1913), 214 Mass. 480, 102 N. E. 68. The accuracy of a photograph as a correct reproduction of what it purports to be should be established to the satisfaction of the court before being admitted as evidence but when its accuracy is shown we have no doubt of its admissibility. As was said in *Penley* v. *Teague & Harlow Co., supra,* "Whether it is sufficiently verified, whether it appears to be fairly representative of the object portrayed and whether it may be useful to the jury, are preliminary questions addressed to him and his determination thereon is not open to exceptions," unless, of course, an abuse of such discretion is shown.

2 Wigmore, Evidence §794, in speaking of the necessity of a witness verifying a map, photograph, etc., says: "The witness thus standing sponsor must be *qualified by observation* . . . to speak of the matters represented in the picture. Whether this requirement is properly fulfilled should be left to the determination of the trial court."

Appellant argues that the photographs are incompetent for the reason they are "self-serving and have the effect of hearsay evidence." This is possibly said be-

cause "we unwittingly give the document the credit for speaking for itself," but "we are to remember, then, that a document purporting to be a map, picture, or diagram, is, for evidential purposes, simply nothing, except so far as it has a human being's credit to support it. It is mere waste paper, a testimonial nonenity. It speaks to us no more than a stock or a stone. It can of itself tell us no more as to the existence of the thing portrayed upon it than can a tree or an ox. We must some how put a testimonial human being behind it (as it were) before it can be treated as having any testimonial standing in court. It is *somebody's testimony,* or it is nothing. . . . It is immaterial *whose hand prepared the thing* provided it is presented to the tribunal by a competent witness as a representation of his knowledge. . . . A map, model or diagram, though made out of court, is nevertheless subject to cross-examination through the witness who verifies and uses it. Hence the objection based on the hearsay rule, that it is prepared 'ex parte' is groundless." The objection made at the trial to the introduction of the photographs in evidence was to the effect that they were hearsay, and that the plaintiff (appellant) was not present when the photographs were taken, and had no control over the same. But the fact that appellee was not present when the photographs were taken, or that he had no control over the same, does not make such photographs inadmissible. They were verified by Rickets, the photographer, who testified to all the surrounding circumstances concerning the taking of such photographs and by Robbins, a competent witness. These two witnesses were subject to cross-examination. *Young* v. *Dunlap* (1916), 195 Mo. App. 119, 190 S. W. 1041.

There is no merit in appellant's contention that the photographs represent a theory of appellee and present

a tableau effect. Cases cited by appellant are not ▮ applicable to the instant case. The cases wherein photographs have been held incompetent are cases in which positions have been assumed merely to portray a theory. They are cases wherein the photographs are merely reproductions of a planned or hypothetical situation or condition. See *Nunnelley's Admr.* v. *Muth* (1922), 195 Ky. 352, 242 S. W. 622, 27 A. L. R. 910; *Welch* v. *Louisville, etc., R. Co.* (1915), 163 Ky. 100, 173 S. W. 338; *Fore* v. *State* (1898), 75 Miss. 727, 23 So. 710. These cases are not applicable to the facts of the instant case. In the case under consideration, the facts show that the photographs portrayed conditions existing in a fixed, inanimate object and are not reproductions of assumed positions merely to portray a theory or a planned and hypothetical situation.

The fact that there was a conflict in the evidence as to the exact location of the collision would not render the photographs inadmissible. See *Higgs* v. *"Soo"* ▮ *R. Co.* (1908), 16 N. D. 446, 114 N. W. 722, 15 L. R. A. (N. S.) 1162, 15 Ann. Cas. 97; *Rodick* v. *Maine Central R. Co., supra.* This difference in evidence as to the location of the collision could have been made the basis of cross-examination. It is to be remembered that photographs are not conclusive to such an extent that evidence in conflict with them will be ignored. They are no more conclusive of physical facts than the testimony of witnesses. It is for the jury to determine their weight and reliability by the same test used in weighing other evidence. "It seems to be well established that the weight to be given to a photograph depends upon the manner and circumstances under which it is taken and the skill of the artist and the perfection of the instrument with which it is taken. . . . But its weight should be left to the jury to be determined under the same tests that all other evidence is weighed."

*Higgs* v. *"Soo" R. Co., supra.* See, also, *Stotelmeyer* v. *Chicago, etc., R. Co.* (1910), 148 Iowa 278, 127 N. W. 205; *Coleman* v. *Norfolk, etc., R. Co.* (1926), 100 W. Va. 679, 131 S. E. 563; *Perkins* v. *Director General of Railroads* (1922), 133 Va. 242, 112 S. E. 839; *Lewis* v. *City of Spokane* (1923), 124 Wash. 684, 215 Pac. 36; *Bretall* v. *Missouri Pacific R. Co.* (1922), 239 S. W. (Mo. App.) 597. Photographs are dependent for their convincingness upon the skill of the person making them and the truthfulness of the one vouching for them. *Lake Erie, etc., R. Co.* v. *Wilson* (1901), 189 Ill. 89, 59 N. E. 573. The weight to be given to a photograph as evidence depends also upon the character of the thing shown in evidence, as well as the skill of the person taking the photograph. *Baustian* v. *Young* (1899), 152 Mo. 317, 53 S. W. 921, 75 Am. St. 462.

Appellant also argues that the photographs were misleading to the jury and for that reason such photographs were incompetent as evidence. But, as was said in 2 Wigmore, Evidence §792: "The objection that a photograph *may* be so made as to *misrepresent the object* is generally directed against its testimonial soundness, *but it is of no validity.* It is true that a photograph can be deliberately so taken as to convey the most false impression of the object. But so also can any witness lie in his words. A photograph can falsify just as much and no more than the human being who takes it or verifies it." (Our italics.) As we have already stated in this opinion, it is within the sound discretion of the trial court, as a preliminary question, to decide whether or not the photograph can be of any assistance to the jury. We believe this discretion is broad enough to permit the court to pass upon the possibility that the photograph will mislead the jury. We do not think the court abused its discretion in this regard. However, after the court has, as a

preliminary question, properly passed upon the admissibility of the photographs, "it is for the jury and not for the court to say whether the photographs.lied, just as it was (is) for the jury and not for the court to decide upon the credibility of any witness." *Mitton* v. *Corgill Elevator Co.* (1913), 124 Minn. 65, 144 N. W. 434. The only case we have been able to find wherein the facts are at all similar to the facts in the instant case is the case of *Hall* v. *State* (1919), 78 Fla. 420, 83 So. 513, 8 A. L. R. 1234. In that case, pieces of white paper were placed upon the floor of a room after a shooting affair to indicate where the bodies.of two men fell upon the floor. Photographs of the room taken with the white pieces of paper thus placed upon the floor were introduced into evidence. Motion was made to strike out " 'so much of the pictures as contained said white spots and moved the court to strike the testimony about the papers being placed where the bodies lay and to exclude from the jury the white spots in the pictures as parts of the evidence.' " The court refused to grant the motion, and the Florida Court of Appeals said: "The fact that placing the pieces of paper on the floor to represent the spots where the two wounded men were lying after the shots were fired made the photographs a kind of tableau picture, yet they were not subject to the criticism that anyone's version, theory or interpretation of the character of the act was thus sought to be brought before the jury as a photographic view of the actual occurrence. We think the assignment based upon the defendants' motion to strike the testimony and to exclude the white spots from the picture is without merit and must fail." It is quite evident from the facts in the instant case that the photographs were introduced in evidence for the purpose of showing the path appellee's car traveled after the collision. The facts show that the

tire and rim of appellee's left front wheel came off the wheel when the cars collided. There was evidence aside from the verification of the photographs that, at the time of the accident, appellee's car was from a foot to a foot and a half to the right of the center of the highway and that, after the collision and after the tire and rim came off the wheel, appellee's car then traveled in a circular direction to the left side or east side of the road. Appellant admits that the testimony of Rickets as to what he saw in the way of marks on the pavement would be competent "for the consideration of the jury, in the consideration with all the other evidence in the case in determining what connection, if any, they had with the matter in controversy." Under these conditions, we can see no reason why the photographs of what he saw should be excluded. The chalk was placed in the scratches in order that they might be visible to the camera's eye, and that they might be seen in the picture. This was fully explained to the court and jury by the photographer. The purpose of the chalk was not to materially emphasize the width, breadth or depth of the scratches, but was merely to show direction. The chalk might have had the effect of producing a slight "tableau effect" as contended for, but, under the circumstances and the facts as explained, it cannot be said that the photographs were pictures, self-serving or representing a theory of appellee. The court did not err in admitting these photographs in evidence.

Under the fourth, fifth and sixth grounds for a new trial, the appellant says the court erred in giving and in refusing to give certain instructions. No question, however, is presented as to the giving or refusing to give these instructions, for the reason that, under clause 5 of Rule 22 of the Supreme and Appellate Courts, as amended January 1, 1924, the appellant is required to recite the instructions that were

*given.* We quote so much of such rule as is applicable. "When error is predicated on the giving or refusal of instructions the statement must recite the instructions that were given." Since the adoption of the above amendment to Rule 22 on January 1, 1924, it has been necessary to set out in the brief all instructions given. See *Linn Grove, etc., Power Co.* v. *Fennig* (1927), 86 Ind. App. 170, 154 N. E. 877.

The appellant has not seen fit in his brief to comply with the rule cited above. He has in a meager way attempted to make a statement as to what each instruction was. As an illustration, we quote what is set out as the court's instruction No. 5: "Instruction No. 5. This instruction was to the effect that the jury should consider the testimony of the witnesses on the theory that they have intended to testify truthfully, and gave the ruling as to reconciling testimony, and that they should not arbitrarily reject or disregard any of the evidence." The court's other instructions were treated in the same manner as instruction No. 5, above mentioned. It becomes apparent that these instructions were not the instructions of the court "set out" and recited, but that they are, at the most, an attempt to state what the appellant's opinion was as to what the several instructions contained. The attempt to set out and recite all of the instructions given in this case falls far short of the requirement of clause 5 of Rule 22. This rule requires that all instructions given must be set out in full in the brief. This rule not having been complied with, this court cannot consider the fourth, fifth and sixth grounds for a new trial, these grounds being based upon instructions.

We find no reversible error.

Judgment affirmed.