ARMSTRONG v. MATZAT

[No. 18,817. Filed December 14, 1956. Petition for rehearing denied, January 22, 1957. (Set aside), March 22, 1957. Transfer denied June 19, 1957.]

*Paul E. Reed,* of Knox, and Leo J. Clifford, of Valparaiso, for appellant.

*Phillip M. Cagen, Elmore S. McGray,* and *James J. McGarvey,* all of Valparaiso, for appellee.

CRUMPACKER, J.—The appellee suffered personal injuries as the result of a collision between an automobile in which he was riding as a passenger and one driven by the appellant at the intersection of two public highways about five miles south of the city of Knox, Indiana. Charging that said collision was caused solely by the appellant's negligence, as specifically set out in the complaint, the appellee brought this suit to recover resulting damages and was awarded a verdict by a jury in the sum of $7,500 upon which judgment was duly entered. This appeal is predicated upon alleged error of the court in refusing to give the jury three instructions tendered by the appellant and in admitting in evidence, over the appellant's objections, "Plaintiff's Exibit 6," which is an engineer's drawing of the intersection involved.

To fully understand the application of the appellant's contentions to the facts of the case a description of the intersection is necessary. State Road 10 runs due east and west across Starke County about five miles south of the city of Knox, Indiana. U. S. Highway 35, as it traverses Starke County from south to north, junctions

with State Road 10 at Bass Lake. From this point the two roads form a common highway in an easterly direction for a distance of a mile or two where they separate, State Road 10 continuing due west and U. S. Highway 35 veering off to the northwest in a sweeping curve, thus forming a type of road intersection commonly called a "Y". U. S. Highway 35 is a hard surfaced road 22 feet in width and heavily traveled. State Road 10, after it leaves U. S. 35 going west, has an oil mat surface 18 feet in width and bears a much lighter traffic than does U. S. 35. A traveler approaching this junction from the east and intending to pass through it and continue west on State Road 10 has equal rights in the intersection with travelers on U. S. 35. In other words to such a traveler U. S. 35 is not a preferential way. The accident in controversy occurred when a car driven by the appellant entered this Y intersection from the northwest on U. S. 35 and collided with a car in which the appellee was riding as the driver thereof was attempting to pass in a straight line directly through said intersection from the east and continue west on State Road 10.

Upon trial of the case the appellee contended that such accident was due solely to the negligence of the appellant in that the junction of the two roads in question created a dangerous intersection but notwithstanding such fact the appellant drove his car into the same at a high and dangerous rate of speed without maintaining a proper lookout for other cars that might be lawfully in the intersection.

It is conceded by both parties that the junction of roads 35 and 10 at the place of the accident in question constitutes the intersection of two highways within the meaning of §47-1815, Burns' 1952 Replacement. The appellant contends that the driver of the car in which the appellee was riding was, in effect, making a

left turn when he attempted to drive straight through the intersection and continue on the left arm of the Y. This being true such driver's conduct was governed by §47-2023, Burns' 1952 Replacement (b), which requires a timely signal of an intention to make a left turn at a highway intersection. While the appellant does not contend that the negligent failure of the driver of the appellee's car to give such a signal can be imputed to the appellee, under the facts of this case, he does say that he had the right to assume, until the contrary appeared, that such driver would obey the law and his failure to give the required signal should be considered by the jury in determining the appellant's negligence or lack of it.

To cover this theory of his defense, the appellant tendered three instructions each of which presents substantially the same question of law. Each is based upon the premise that under the evidence in this case the car in which the appellee was a passenger was, in legal effect, making a left turn as it crossed the path of southbound traffic on U. S. Highway 35 and its driver was bound to comply with the statute of the State of Indiana with respect to such turns. Each of these instructions was refused by the court and error charged in that respect presents the major question involved in this appeal.

In general terms the problem may be stated thus: Are there circumstances under which the statutes of Indiana, pertaining to left turns on public highways, govern the conduct of the driver of an automobile who is driving straight ahead and, in fact, is not changing the direction of his course in any degree whatever? The appellant says "yes" and, in summary, his argument is to the effect that our statute pertaining to left turns was enacted to prevent collisions between oncoming automobiles when the course of one automobile

is across the path of another. That the danger of a collision is neither increased nor decreased by the fact that such crossing may or may not require a left turn in a purely physical sense. Therefore if a straight course is bound to take a driver across the path of an oncoming automobile such driver has a statutory duty to manifest his intention of crossing by signaling a left turn. As the appellant expresses it: "Whenever the driver of Car A has a choice of two courses, one of which will take him to the righthand side of oncoming Car B and the other of which will take him across the path of oncoming Car B the danger of a collision is imminent. It seems obvious that the driver of Car B cannot know which course of travel the driver of Car A is going to pursue in the absence of some signal." This is an ingenious argument but it seems to us that the rule advocated by the appellant would apply equally to right angle intersections and a driver intending to pass straight through such intersection would be required to indicate his intention of doing so by a left turn signal which would not only be confusing but quite absurd.

There is no case in Indiana that remotely suggests such a construction of our left turn statute but we are referred to *Jennings* v. *Arata* (1948), 83 Cal. App. 2d 153, 188 P. 2d 298, which the appellant insists, in the absence of local authority, should be accepted as decisive of the question. The physical layout in the California case is quite similar to that involved here. The defendant was traveling along the stem of a Y junction of Peabody Road and Highway 4. In the direction the defendant was traveling Peabody Road lay straight ahead and Highway 4 made a sweeping curve to the northwest thus forming the Y. The defendant was intending to proceed west on Peabody Road and in attempting to do so he collided with the plaintiff's car which had entered the intersection from the northwest

on Highway 4. There was evidence in the case that the defendant had entered the curve and in attempting to reach Peabody Road, which constituted the left arm of the Y, he slanted off his course to the left and collided with the plaintiff's car. On this state of the evidence the court instructed the jury as to the California statute concerning left turns. The defendant charged error in this respect, contending that the statute pertained only to right angle turns. The court said: "Patently this argument is fallacious. Any change of direction in front of vehicles approaching in the left lane must be construed as a 'left turn' requiring proper signals." The court then added the following statement upon which the appellant relies in the present case: "And where the vehicle, even without an actual change of direction, is leaving the main highway and may cause a hazard to vehicles approaching from an opposite direction it cannot be said as a matter of law that an instruction on left-turns is erroneous." The instruction was justified, however, by this significant statement: "This is particularly true in the instant case since there is evidence which would have entitled the jury to find that the defendant had actually entered the curved portion of Highway 4 from whence an angle turn would be required to enter Peabody Road."

We have no such situation before us. There is no evidence in this case that the appellee's car was in a position where it would be required to deviate from a straight course in order to reach Road 10 where it leaves the junction. Furthermore the statement of the California court that the pursuance of a straight course may require signals of an intention to turn left is limited to a situation where a vehicle is about to leave a "main highway" and thereby create a traffic hazard. What is a "main highway?" If it is an improved through road connecting many cities and towns in the state

then both U. S. Highway 35 and State Road 10 may be considered main highways. Or does the term have purely local application and hence should be defined as the road bearing the heavier traffic at any given intersection? Neither the legislature nor the courts have defined the term and we are not prepared to say that the present accident occurred when the appellee, as the California decision puts it, was "leaving the main highway."

Sec. 47-2020, Burns' 1942 Replacement, provides:

"The driver of a vehicle intending to turn at an intersection shall do as follows: Sub Section B: Approach for a left turn shall be made in that portion of the right half of the roadway nearest the center line thereof and after entering the intersection, the left turn shall be made so as to leave the intersection to the right of the center line of the roadway being entered."

The appellant contends that a fair construction of this statute means that when the driver of a vehicle enters an intersection and intends to enter the intersecting road to the left he shall do so in such manner as to oppose or obstruct oncoming traffic for the shortest possible distance. In other words, he must cross the left lane of the road he is leaving at right angles. Such an interpretation of the statute is entirely logical when applied to right angle intersections as it thus forbids cutting corners so to speak. But applied to a Y intersection it becomes impractical and, in our opinion, beyond anything the legislature had in mind when it enacted the statute quoted. It is conceivable that a strict compliance with the statute, as construed by appellant, might require a motorist to make a U turn on the road he intends to leave, retrace his way to the intersection and turn right into the fork of the Y he desires to take. This is, of course, an extreme illustration but it's possibility leads us to the con-

clusion that the above statute was intended to apply only to right angle intersections and we therefore hold that all instructions embracing the appellant's construction thereof were properly refused.

During the trial "Plaintiff's Exhibit 6" was admitted in evidence over the appellant's objections. This exhibit is an engineer's drawing of the intersection made several years after the accident. The engineer who made the drawing did not testify and in fact the exhibit is not the original drawing but a copy of it made by another engineer who testified that he was thoroughly familiar with the intersection and that the exhibit accurately depicted the same at the time of the accident. The appellant's *voir dire* examination of the witness, upon which his objection is based, conceivably robbed the exhibit of weight but did not destroy its admissability for what it was worth. *Haven* v. *Snyder* (1931), 93 Ind. App. 54, 176 N. E. 149; *Reynolds* v. *State* (1944), 222 Ind. 600, 56 N. E. 2d 495.

Judgment affirmed.

NOTE.—Reported in 138 N. E. 2d 918.