## DAVID GREEN v. STATE OF INDIANA.

[No. 1174S222. Filed June 22, 1976. Rehearing denied August 16, 1976.]

*Frederick B. Robinson,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Alden,* Deputy Attorney General, for appellee.

DEBRULER, J.—Appellant, David Green, was indicted for first degree murder, Ind. Code § 35-13-4-1 (Burns 1975). Trial was had by jury, and a verdict of guilty as charged was returned. He received a sentence of life imprisonment.

Appellant asserts on appeal that the trial court erred in permitting State's exhibit # 12, a photograph, to be introduced

into evidence as it was not properly identified. He also asserts that there was insufficient evidence introduced at trial to warrant conviction. As to this issue, appellant claims that there was no evidence that he intentionally shot the victim, Florence Nelson; there was no evidence that Florence Nelson did in fact die; and the evidence was insufficient to permit the jury to find that the shotgun was loaded with gunpowder as alleged in the indictment.

The events described by the witnesses for the State took place on Christmas Eve and early on Christmas morning in 1973, in the house of the victim Florence Nelson. At that time, appellant and Florence Nelson were living together in the house as man and wife. On the occasion described, one of the victim's sons was home from the service and ten or fifteen young people were in the basement of the house having a party. Appellant became annoyed at the gathering and was unable to break it up and get the visitors to leave. He argued with Florence Nelson about the party, and this argument ended with appellant leaving the house in anger. Twenty minutes later he telephoned back to the house and told Florence Nelson that he was sorry for his actions and intended to return home. She told him not to come back.

Ten minutes after this call, appellant returned to the house armed with a shotgun. He entered and stood in the doorway between the kitchen and an adjoining bedroom and pointed the gun at Florence Nelson as she sat across the kitchen at the kitchen table. Her four year old daughter, Trina, was sitting on her lap. Appellant announced that he was going to kill Florence Nelson. One of her children called the police.

Shortly thereafter, Officer West was admitted to the house. Appellant still held the gun on Florence Nelson. The child Trina, also called BooBoo, was still on her lap. As he entered, the officer heard appellant say, "Don't come in here or I will shoot her." The officer entered the kitchen, pointed his gun directly at appellant, and replied, "You shoot her and you are dead."

At this point, and throughout the subsequent violent events, Florence Nelson was situated between appellant and Officer West, in the line of fire. Appellant still stood with the gun held at waist level, his right hand on the trigger, his left hand on the pump action, pointing it at Florence Nelson and Trina. Officer West told appellant, "Put the gun down or I will shoot." After this warning was spoken, an older child present moved to take the child Trina from her mother's lap. Appellant said, "Leave BooBoo alone." Mrs. Nelson said, "You won't shoot her." Appellant then said, "I will shoot her, and I will shoot you too." After a few more moments, instead of putting the shotgun down, appellant started to raise the gun, as though to point it at Officer West. Officer West, fearing for his own life, fired the first shot at appellant. Appellant fired his first shot immediately thereafter, striking the child Trina, who fell bleeding to the floor. He then pumped a new round into the firing chamber of the gun and fired a second time, hitting Florence Nelson in the stomach as she arose from her seat, and she too, fell bleeding to the floor. Officer West fired three more shots at appellant, who then dropped the gun and ran into the adjoining bedroom, where he was seized moments later. He suffered only a small wound to the left hand.

The twelve gauge pump action shotgun with a live round in the firing chamber was found under the kitchen table. Two spent shotgun shells were found on the floor of the kitchen. Several live shotgun shells were found on appellant's person. The gun and shells were admitted in evidence and were described as Felder, three and one-quarter gain low.

On February 4, 1974, a month and a half later, post-mortem was performed on the body of Florence Nelson. Many small pellets were removed from the organs and tissues of the abdominal cavity, and death, in the opinion of the pathologist, resulted from diffused acute generalized peritonitis, further described as an inflammation or infection resulting from the introduction of bacteria into the body by the entry of the pellets. The pathologist determined that she had been operated

on after the shooting and had been fed intravenously. She had lived for a short period after the shooting, however, the exact date of death was not shown.

Appellant first contends that the trial court erred in overruling an objection to the introduction of State's exhibit 12. This exhibit is a black and white photograph of the nude body of the victim situated face up on a table. This exhibit was first identified by Officer Schoppenhorst, an evidence technician, who attended the autopsy and took the photograph. He testified that it was a true and accurate representation of the body of Florence Nelson. Appellant objected to the introduction of the exhibit on the ground that it was inflammatory because of the surgical marks in the abdominal area, and also on the ground that the witness had no knowledge of the identity of the body. This objection was sustained.

Later, the witness Jean Nelson, daughter of Florence Nelson, testified that exhibit 12 was a photograph of her mother. The area of the photograph showing surgical marks was covered with a piece of cardboard taped to the photograph. The exhibit was offered again for introduction. The same objection to the introduction was made as had been previously made. The objection was overruled. This ruling was not error. The testimony of the evidence technician to the effect that the photograph accurately portrayed the scene as he saw it established a proper foundation for the exhibit's admission. 3 WIGMORE, EVIDENCE § 790, 794 (Chadbourn ed. 1970) ; *Haven* v. *Snyder,* (1931) 93 Ind. App. 54, 176 N.E. 149. *See also, Johnson* v. *State,* (1972) 258 Ind. 648, 283 N.E.2d 532; *McDonald* v. *State,* (1954) 233 Ind. 441, 118 N.E.2d 891. The identification testimony of Jean Nelson established its relevancy. The photograph was properly admitted into evidence.

Appellant challenges the sufficiency of the evidence to prove that the shooting was done purposely and with premeditated malice. The evidence presented by the State clearly warranted the jury in finding these elements to have been proved beyond a reasonable doubt. Appellant held Florence Nelson at gun-

point for thirty minutes. The shotgun was loaded and ready to fire throughout this time. Appellant repeated again and again that he was going to kill her. Moments before Officer West fired the first shot, appellant repeated this threat. He then fired the shotgun, at point blank range, striking her in the abdomen. The malice and purpose shown was expressed and considered by appellant for thirty minutes. The fact that appellant's shots were fired after Officer West fired the first shot at him and the fact that Florence Nelson was hit as she rose in the line of fire, do not negate the force of the evidence of express malice and purpose. The jury could reasonably have concluded that appellant carried out his plan to shoot and kill the victim, even in the face of the threat posed by Officer West's armed attack.

Appellant argues that the State's evidence fails to prove that he purposely and intentionally fired the gun, and that indeed it shows only that he fired it as an uncontrollable reflex action to Officer West's shots, or that he fired the gun unintentionally when Officer West's shot struck his left hand. These contentions call upon us to weigh the evidence contrary to this Court's limited appellate role. However, both views of the significance of the evidence can be reasonably rejected on common sense grounds. Appellant fired his weapon twice. The series of operations require to fire twice shows that appellant was attentive to what he was doing. And, while one of Officer West's shots struck appellant's hand, that hand was on the pump action and not the trigger. And even if the bullet striking his left hand might have caused the discharge of the gun, such a single event could not have caused the gun to discharge two times.

Contrary to appellant's next claim, the State did present evidence from which the jury was warranted in finding beyong a reasonable doubt that Florence Nelson did in fact die in the aftermath of this shooting. Officer West and others testified that she was shot in the abdomen by a blast from appellant's gun. The testimony of Officer Schoppenhorst and Jean Nelson established that the State's exhibit 12 was a

photo of Florence Nelson, and the pathologist testified that he performed an autopsy on the body depicted in State's exhibit 12 on February 4, 1974, and that death had resulted from an infection following a shot in the abdomen from a shotgun.

And finally, we think there was sufficient and substantial evidence presented by the State that appellant's shotgun was loaded with gunpowder as charged in the indictment. The testimony of the witnesses to the events of the evening in which they state that they heard the shots and saw the wounds inflicted, in conjunction with the actual gun and spent and live shells introduced into evidence and described by the officer, established the presence of gunpowder in the weapon.

The evidence was sufficient to warrant the verdict of guilty. The conviction is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 349 N.E.2d 147.