STATE OF MISSOURI at the Relation of GUY A. THOMPSON, Trustee of the MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Relator, v. HOPKINS B. SHAIN, EWING C. BLAND and NICK T. CAVE, Judges of the Kansas City Court of Appeals.—No. 38402.—173 S. W. (2d) 406.

Court en Banc, July 6, 1943.

Rehearing Denied, July 20, 1943.

*Thos. J. Cole, L. J. Bishop, D. C. Chastian* and *Patterson, Chastian & Smith* for relator.

532

*W. W. McCanles* and *F. M. Kennard* for respondents.

534

 

██ TIPTON, J.—This is a certiorari to the Kansas City Court of Appeals. Our writ was invoked in a case decided by that court entitled Melvin Harry v. Guy A. Thompson, Trustee of the Missouri Pacific Railroad Co., a Corporation, reported in 166 S. W. (2d) 795, wherein a judgment of $1,800, obtained by plaintiff in the circuit court, was affirmed.

The plaintiff's action was for personal injuries, which were the result of a collision, occurring on November 16, 1939, between a truck driven by plaintiff and a motor train being operated by relator in [407] the City of Pittsburg, Kansas. The collision occurred where relator's tracks intersect Eighth Street in that City. From the point where the tracks cross the south curb of this street, to where they cross the north curb of this street, is a distance of forty-five feet.

The case was submitted to the jury under the Kansas last clear chance rule which the respondents state is made up of the following elements:

" '(1) Plaintiff, by his negligence, placed himself in a position of danger; (2) that his negligence has ceased; (3) that defendant, seeing plaintiff in a position of danger, or by the exercise of due care should have seen him in such position, by exercising due care on his part, had a clear chance to avoid injuring plaintiff; (4) that defendant failed to exercise such due care; and (5) as a result of such failure plaintiff was injured.' Goodman v. Kansas City, M. & S. R. Co., 137 Kan. 508, 512, 21 P. (2d) 322, 324. It will thus be seen that the last clear chance doctrine of the State of Kansas is based on and limited to cases where plaintiff is in helpless or inextricable peril though so placed by his own negligence and defendant knows or should have known of that condition and has the ability to avoid injury to him."

██ The relator contends the opinion of respondents, which holds that a submissible case was made under the Kansas last clear chance doctrine, conflicts with the controlling decisions of this court. He bases this contention mainly on the ruling of the respondents that the plaintiff was not conclusively bound by his own testimony as to the location of the train and its speed, and, therefore, that ruling conflicts with the controlling cases of this court.

The opinion of respondents states: "Plaintiff testified that he had been proceeding toward the east on 8th Street at a rate of speed of *about* 25 miles per hour as he approached the railroad crossing; that at a point a half of a block therefrom he slowed down his truck to *about* 12 or 15 miles per hour; that there was a house 50 feet east of the track and as he emerged west of this house he looked south down the track but was able to see for a distance of only about 40 feet; that he saw no train at that time; that he looked north and then south again at which latter time he was *about* 15 feet from the east

rail of the track and the left wheels of the truck were *about* upon the center line of the street; that at that time he saw the train and it had no headlight burning; that it was then *about* 15 feet south of the sidewalk coming at a rate of speed of *about* 18 to 20 miles per hour; that he applied the brakes on his truck, turned his front wheels to the south, the rear end of his truck skidded around toward the north and the truck came to a stop with its front wheels astride the east rails of the first track. (Italics ours.)

"He further testified that the truck came to a stop at about the middle of the street; that at this time, the train was just south of the sidewalk and entering into it and 15 to 18 or 20 to 25 feet away, proceeding at the rate of 18 to 20 miles per hour; that the train struck the truck and 'knocked' it back against the curb, at which time he became unconscious; that he was not injured prior to the time the truck struck the north curb.

"On cross-examination plaintiff testified that he knew he was approaching the railroad tracks; that he made no effort to back the truck off of the tracks because he had no time to do so; that the truck was struck 'pretty near the next instant' after it stopped; that when he got the truck stopped the train was just entering into the street just south of the curb about 15 or 18 feet away; (at another place he put this distance as 20 or 25 feet) that he tried to open the door but he could not get out; that he turned his wheels toward the south when 10 feet from the track; that the truck did not turn but skidded forward and slid onto the tracks; that he was about 10 feet from the east rail when he put on his brakes; that at that time the train was 'several feet south of the sidewalk'; that he 'thought the best thing to do was to try to stop'; that he did not think he could make it across the tracks."

In ruling that plaintiff was not conclusively bound by his own testimony, the respondents stated: "If plaintiff is to be bound by his testimony that, at the time he put on the brakes of his truck, the train was 15 to 25 feet south of the sidewalk going at the rate of 18 or 20 miles per hour, then defendant's contention must be sustained. However, this testimony as to time, speed and distances constituted merely estimates on his part and he is not conclusively bound thereby, and we may look to other testimony on this subject."

 "Plaintiff placed a mark upon one of the exhibits, a photograph, which he said showed where the engine was when he applied his brakes. Defendant says that plaintiff thus definitely fixed the position of the engine 15 feet south of the sidewalk. The cross mark shows that the engine was somewhat south of the sidewalk but there is no evidence of any measurements made of the distance between the place shown by the mark and the point of the collision, which, there is evidence tending to show, occurred about the middle of the

street. We do not think that plaintiff is conclusively bound by his testimony on this point. . . .

"The evidence shows that the engineer saw the truck at the time it was a half of a block from the point of the collision and the jury could have found that the motorman saw what occurred during the interim. While plaintiff testified two or three times that the train was entering the sidewalk at the time the truck stopped and he also gave a statement to defendant's claim agent prior to the trial to the same effect, we do not think that he is conclusively bound by this testimony. At one place in his testimony he said that the train 'was just south of the curb when the truck stopped.' At another he said 'it [the train] was just entering into the street.' A collision was impending and plaintiff could hardly be expected, under the excitement of the moment, to observe exactly where the train was when the truck stopped. His testimony shows that he was merely giving an approximation of its position. We think the matter falls within the rule that estimates of time, speed, distances and position constitute exceptions to the general rule that the testimony against his interest is to be treated as a conclusive admission by plaintiff, although it is contradicted, unless the inconsistency is explained."

Relator contends this ruling conflicts with our holding in the case Elkin v. St. Louis Public Service Co., 335 Mo. 951, 74 S. W. (2d) 600, l. c. 603-604. In that case, the plaintiff testified the streetcar that injured him was traveling twenty-five to thirty miles an hour, and a witness for the plaintiff testified the streetcar was going twenty or twenty-five miles an hour; but the plaintiff did not have any evidence in what distance the streetcar going twenty to thirty miles an hour could have been stopped. The defendant's testimony showed that the streetcar was traveling ten miles an hour and could have been stopped in forty feet (motorman testified in his deposition that it could have been stopped in twenty feet at ten miles per hour.)

In ruling the case, we said: "Plaintiff is entitled to the benefit of any evidence offered by defendant which tends to support his theory of the case, and is consistent with his own testimony, but he cannot claim the benefit of any of defendant's evidence which contradicts his own testimony and is at war with his own theory of the case. Plaintiff tried his case on the theory that the speed of the streetcar was twenty-five or thirty miles per hour. He so testified, but he failed to offer any evidence as to the distance in which the car could have been stopped going at twenty-five or thirty miles per hour, and for that reason he failed to make a case under the charge that the collision could have been avoided by stopping the car after the peril arose. Having thus failed to make a case, he will not be permitted to disregard his own evidence as to the rate of speed the car was traveling, as being untrue, and recover on the theory that the car

was traveling at ten miles per hour, and at that rate of speed it could have been stopped within 20 or 40 feet.''

We think the Elkin case is distinguishable from the case at bar. In that case, both the plaintiff and his witness testified the streetcar was going twenty to thirty miles an hour. His theory of the case was that the streetcar was going twenty to thirty miles an hour and there was no evidence to show in what distance the streetcar could be stopped going at that speed. While in the case at bar, a witness (the conductor) testified that as the train approached 8th Street, it was going eight to ten miles an hour. Kluth testified for the plaintiff that the train could be stopped within forty-five to fifty feet going at eight miles an hour under the conditions that existed at the time. Anis, another witness for the plaintiff, testified that he was riding with the plaintiff, and when the truck stopped on the track, the train was from forty to sixty feet away. The testimony of one of the relator's witnesses was that when the train was forty feet south of the sidewalk, it was going five or six miles an hour; another testified that when the train was ten or twelve feet south of the sidewalk it was going eight to ten miles an hour.

Therefore, instead of having the plaintiff's evidence at war with relator's testimony, we see that it is practically the same, [409] except for the plaintiff's own testimony. His testimony does not undertake to state the exact speed of the train, or the exact relative location of his truck or of the train. In each instance, according to the opinion of the respondents, he says it was *about* this speed, or *about* this or that location. It was at best a mere guess or estimate.

We think the holding of the respondents that the plaintiff's testimony is a guess or estimate does not conflict with the Elkin case, but follows our opinion in the case of Cluck v. Abe, 328 Mo. 81, 40 S. W. (2d) 558, l. c. 561. That case was an action for personal injuries resulting from a collision between a motorcycle operated by plaintiff and an automobile operated by defendant. In that case, ''Defendant testified that in his best judgment he traveled about seventy-five feet in making the turn at the rate of *about* ten miles an hour.'' (Italics ours.) In ruling on the question of the defendant's testimony, we said, ''Both parties' testimony as to the rate of speed of the automobile being more or less an estimate, in view of the conflict in the evidence on that question, *defendant's testimony that his automobile was traveling about ten miles per hour did not amount to a judicial admission which concluded him on that question.*'' (Italics ours.)

The other cases relied upon by relator on this question are: Steele v. K. C. So. R. Co., 265 Mo. 97, 175 S. W. 177; State ex rel. Weddle v. Trimble, 331 Mo. 1, 52 S. W. (2d) 864; Pentecost v. St. Louis,

M. B. T. R. R. Co., 334 Mo. 572, 66 S. W. (2d) 533; Dilallo v. Lynch, 340 Mo. 82, 101 S. W. (2d) 7; Smithers v. Barker, 341 Mo. 1017, 111 S. W. (2d) 47; Krause v. Pitcairn, 350 Mo. 339, 167 S. W. (2d) 74; Meese v. Thompson, 344 Mo. 777, 129 S. W. (2d) 847.

These cases do not rule on the question of an estimate as to speeds or distances. In fact, they do not pass on the question that when a party testifies the speed or distance is *about* this or that, it is a judicial admission or a mere estimate.

, We hold respondents' ruling that plaintiff's testimony as to speed and distances was a mere guess or an estimate does not contravene any ruling of this court.

There is another question, in reference to the evidence, and it is that relator contends the respondents' ruling that the testimony of Kluth, plaintiff's expert witness, was of probative force and conflicts with our case.

In ruling the question, the respondents said: ''However, it is claimed that the testimony of the witness, Kluth, was improperly admitted, over the objection of defendant, for the reason that the hypothetical question propounded him did not include the element of in what distance the motor train could have been stopped with safety to the motorman, passengers and equipment, and that there was no proof as to the condition of the train, or brakes, or the load it carried; that the witness did not operate the motor train until four months after the collision. The question propounded the witness assumed that it had been raining and was drizzling rain at the time of the collision, and he was asked within what distance the train could have been stopped, under such circumstances, with safety to its passengers and equipment. The motorman and the load carried was not mentioned but the question was not objected to on that ground. There is no merit in the contention. Burton v. Chicago & Alton R. Co., 176 Mo. App. 14, 162 S. W. 1064; Jackson v. Kansas City Rys. Co., Mo. App., 232 S. W. 752.

''The evidence shows that the train was equipped with Westinghouse brakes, both at the time of the collision and at the time the witness operated it, and, according to the testimony of defendant's motorman, they were in good condition at the time of the collision. We do not think we may disagree with the trial court in permitting the witness to answer the question under the circumstances.''

We think the respondents answered every question raised on this point by relator in conformity with our late case of Bebout v. Kurn et al., 348 Mo. 501, 154 S. W. (2d) 120.

We have already set out what respondents say is the last clear chance doctrine of Kansas. Relator does not contend that the law is incorrectly stated. In fact, it follows our late case of Trower

v. Missouri-Kansas-Texas R. Co., 347 Mo. 900, 149 S. W. (2d) 792.

Respondents found that relator admitted "there was evidence tending to show that plaintiff's negligence ceased when he applied his brakes prior to his skidding onto the track." And since we have already stated that the theory of the plaintiff's case as shown by his witnesses was not contrary to the testimony of relator's witnesses, the respondents follow our cases in holding the plaintiff is entitled to the benefit of relator's evidence. The respondents, in ruling that [410] question, said: "Defendant's witness, Cobb, testified that 40 feet south of the sidewalk the train was going at the rate of speed of 5 or 6 miles per hour and that it slowed down so that it was proceeding at a rate of 3 or 4 miles per hour at the time of the collision. Kluth testified that it could have been stopped within 45 or 50 feet, proceeding at a rate of speed of 8 miles per hour, and in 20 feet going at the rate of 3 miles per hour. It was within the province of the jury to find from his testimony, that the train could have been stopped within at least 62½ feet, 40 feet, plus 22½ feet, the latter being the distance from the curb to the center of the street where the collision occurred." The above ruling did not contravene any of our controlling cases.

Relator, also, contends the proximate cause of the collision was the slippery condition of the street. In his brief, relator says, "The opinion of the Court of Appeals bypasses this point." This is a certiorari proceeding, and we are only interested in whether or not the opinion of respondents conflicts with the controlling decisions of this court. Since the respondents bypass this point, it could not be a matter of conflict.

Relator contends that respondents' opinion, in approving plaintiff's instruction No. 1, conflicts with the controlling decisions of this court. He contends the instruction erroneously places a duty upon him if the plaintiff *might* come into a position of peril.

The respondents summarized this instruction as follows:

"This instruction told the jury that, if plaintiff was in a position of imminent danger and helpless peril from the time the truck began skidding until it stopped, and that he was unable to extricate himself therefrom, by the exercise of ordinary care on his part, and that defendant's motorman, saw or by the exercise of ordinary care on his part, could and should have seen the truck skidding and sliding toward and onto said track and that it was reasonably apparent to him 'that the truck *would* or *might* skid onto the track,' and come to a stop thereon, and that the conductor saw or could have seen plaintiff 'while the truck was skidding, and thereafter while stopped on said track, if you find such to be the facts, was in a situation of imminent danger and helpless peril of being struck by said train, if you so find he was, and that he could not then and there

extricate himself therefrom by the exercise of ordinary care on his part, if you so find, and that thereafter the defendant's engineer by the exercise of ordinary care . . . . could have stopped said train and prevented it from colliding with said truck and have thereby avoided injuring the plaintiff, if you so find he could, and that he failed and neglected to do so, if you so find, and that in all the foregoing respects the defendant was guilty of carelessness and negligence . . . and that as a direct result of said carelessness and negligence, if you so find, the truck was struck and pushed by said train, if you so find, and the plaintiff was thereby injured, if you find he was injured, then it will be your duty to find the issues in favor of the plaintiff and against the defendant.'" (Italics ours.)

In ruling this point, the respondents said: "It is insisted that the instruction is erroneous in using the words 'would' and 'might' because there is no duty under the last chance doctrine to act on the possibility of danger. However, it will be noted that the words 'would or might' were coupled with the requirement that the jury find that the plaintiff was actually in a position of helpless peril while the truck was *stopped* on the track and the conductor saw or could have seen him in such condition. We find no reversible error in the instruction."

Relator contends this instruction put a duty on the engineer if it were apparent that the truck would or *might* skid upon the track. In other words, there was no duty on the engineer to take any step until he saw, or could have seen, by the exercise of ordinary care on his part, the plaintiff in a position of peril.

Discussing a similar proposition, the Supreme Court of Kansas in Mourning v. K. C. Ry. Co., 110 Kan. 417, said: "Reasonable care on the part of a motorman did not require him to take extreme measures to prevent his car from reaching the path of the truck until it became evident that the truck could not or would not stop, but would inevitably go in front of the car."

It was the duty of respondents to adjudicate this cause according to the decisions and laws of the State of Kansas. Woodard v. Bush, 282 Mo. 163, 220 S. W. 839; Sing v. St. Louis-San Francisco Ry. Co., 30 S. W. (2d) 37.

Therefore, there was no duty on relator's engineer to do anything to stop his train until it became evident that plaintiff's truck [411] was in a position of peril. In that respect, the Kansas law is the same as our humanitarian rule. In the case of Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S. W. (2d) 961, l. c. 970, we said: "But the law is that the duty [defendant's duty] does not arise *until* a situation of peril arises." "That case bluntly announces that the defendant is under no duty to act before the plaintiff is

actually in a position of imminent peril." Hilton v. Terminal R. Ass'n. of St. Louis, 345 Mo. 987, 137 S. W. (2d) 520, l. c. 522.

The instruction placed a duty on the relator's engineer if it might skid on the tracks. In holding this instruction is not erroneous, the respondents failed to follow the case of Mourning v. K. C. Ry. Co., supra, and the Buehler case.

That portion of respondents' opinion in conflict herein and the record made pursuant thereto should be quashed. It is so ordered. All concur except *Gantt, J.*, absent.