226 S.W.2d 743 (1950)
BURRIS
v.
KANSAS CITY PUBLIC SERVICE CO.
No. 21260.
Kansas City Court of Appeals, Missouri.
February 6, 1950.
*745 Charles L. Carr, Arthur C. Popham, Sam Mandall, Kansas City, Popham, Thompson, Popham, Mandell & Trusty, Kansas City, of counsel, for appellant.
Homer A. Cope, Leon V. Copley, and Walter A. Raymond, Kansas City, for respondent.
BOUR, Commissioner.
This is an action for personal injuries and property damage resulting from a collision between a streetcar operated by defendant and a truck driven by plaintiff. Plaintiff recovered a judgment for $4765, and defendant has appealed.
The first amended petition on which the case was tried alleges that Twelfth Street runs east and west in Kansas City, Missouri, and Wabash Avenue runs in a northerly and southerly direction intersecting Twelfth Street; that on September 15, 1945, plaintiff was driving his truck in an easterly direction on Twelfth Street, and when the truck had reached a point on said street at or near the intersection of Twelfth Street and Wabash Avenue, one of defendant's streetcars, being operated also in an easterly direction on Twelfth Street and to the rear of plaintiff's truck, was negligently controlled and operated by defendant as to cause the streetcar to collide with the rear of plaintiff's moving truck, thus causing the truck to come into contact with an iron utility pole, as a result of which the truck was damaged and plaintiff suffered many personal injuries. The answer admits defendant's corporate capacity and that there was a collision, denies every other allegation of the petition, and pleads specific grounds of contributory negligence.
Plaintiff testified on direct examination as follows: Just prior to the accident he drove his truck south on Olive Street to Twelfth Street. Before entering Twelfth Street, at Olive, he stopped, looked west and saw an eastbound streetcar on Twelfth Street, about two blocks away, just leaving the intersection at Twelfth Street and Brooklyn Avenue. He made a left turn into Twelfth Street, and as he drove eastwardly on that street towards Wabash Avenue, intending to turn south on Wabash, his truck was straddling the south rail of the streetcar track on which the streetcar mentioned was proceeding. He heard the streetcar bell and saw the approaching car in his rear vision mirror, and this caused his to turn his truck off the track. He gave a slow signal when he was about 60 feet west of Wabash. He was driving at *746 a speed of about fifteen miles an hour until he began to turn off the track, when he slowed down to seven or eight miles an hour. He was turning off the track, headed southeast, when the streetcar collided with the "rear end on the left-hand corner" of the truck with such force as to cause plaintiff to lose control of the steering wheel and the truck to continue in a southeasterly direction until the front end of the truck collided with an iron utility pole on the south side of Twelfth Street, about 15 or 20 feet west of the west curb of Wabash Avenue. Plaintiff was rendered unconscious by the collision. A more detailed statement of part of plaintiff's testimony is set forth below.
Plaintiff's Exhibits 4, 5, and 6 are photographs taken soon after the collision by Joseph W. Kilbain and Roy T. Wesley, Jr., police officers who investigated the accident. Exhibits 5 and 6 show the truck at rest, headed southeast, with its damaged front end against the utility pole on the south side of Twelfth Street, just west of Wabash. Kilbain, Wesley, and Orville J. Marshall, another police officer who investigated the accident, all testified as witnesses for plaintiff that Exhibits 5 and 6 correctly portray the location of the truck when they arrived at the scene of the accident. Exhibit 4 is a picture of the front and right side of the streetcar involved in the accident. This picture shows a three or four inch projection on the right-hand side of the street car (the south side as the car proceeded eastwardly), about 10 or 12 feet back of the front end of the car and immediately back of the right front door. This projection is due to the fact that the front part of the car (the vestibule) is about 3 or 4 inches narrower on each side than the rest of the car. Exhibit 4 shows marks on the front side of the projection. Plaintiff's witness Wesley testified that the "damaged portion of the streetcar" was "on the corner, behind the front doors." Plaintiff's witness Kilbain testified that "the front end of the streetcar itself, the extreme front part, showed no damage at all"; but that the front side of the projection mentioned above was damaged.
Plaintiff's witness Jesse J. Smart, a passenger seated on the north side of the streetcar, testified that when he first saw the truck it was on the track ahead of the streetcar; and that the driver of the truck was turning off the track and gradually easing to the right when the projection on the right side of the streetcar struck the left rear of the truck and it "lunged" into a pole. Mrs. Dorothy Parks, another passenger seated on the north side of the streetcar, testified for plaintiff that she did not see the truck before the collision; that she felt a slight bump or jar when the collision occurred and that the impact was "toward the front of the streetcar * * * forward of the center," but that she did not know the exact point of impact. The testimony of Mrs. Herman Francis was substantially the same as that of Mrs. Parks. Plaintiff's witness Nettie Moore testified that she did not see the collision, but that she arrived at the scene of the accident immediately after the collision and that she saw green and yellow paint from the streetcar on the "leftside the left rear side" of the truck.
As to the defendant's evidence, we quote from the defendant's brief: "Defendant's witnesses testified that after plaintiff turned his truck into Twelfth Street he drove it to the right of the south streetcar rail, between the streetcar rail and the south curb, in his own proper lane and clear of the streetcar. The streetcar and the truck were both moving at a speed of from 10 to 15 miles an hour. The truck driver gave a `slow' sign; the truck slowed down and as the streetcar was overtaking and passing it, the truck swerved over to its left and the driver of the truck then turned his wheel to the right and the back end of the truck then struck the right-hand side of the streetcar about 10 to 12 feet back of the front end of the car." Defendant's evidence also showed that the collision occurred about 40 feet west of Wabash Avenue when the front end of the streetcar was about even with the front end of the truck.
Defendant's first point is that the trial court erred in refusing to sustain defendant's *747 motions for a directed verdict and for judgment. Defendant's argument is as follows: Plaintiff's Exhibit 6, a picture of the rear of the truck, shows that the back of the truck extends beyond the rear wheels. If the truck was turned to the southeast at the time of the collision, with the left rear wheel still on the track, as plaintiff testified (according to defendant), then "it follows * * * that some portion of the truck extended to, or to the north of the south streetcar rail * * * and * * * it is a certainty that if plaintiff's truck was in the position described by him and was struck by a streetcar, it could only have been struck by the front end of the streetcar." Defendant contends that the physical facts established by plaintiff's evidence show that this did not happen. In this connection, defendant points to the testimony of the police officers who testified that there was no damage to the front end of the streetcar. Defendant says that Exhibit 6 shows no damage to the rear end of the truck, and points out that not a single witness for plaintiff testified that there was any damage to the rear of the truck. It follows, according to defendant, that the front end of the streetcar did not collide with the rear end of the truck, because it is inconceivable that a collision could occur between the front end of a streetcar moving 15 miles an hour and the rear end of a truck moving 7 or 8 miles an hour without resulting in some visible damage to the front end of the street car and the rear end of the truck. Defendant then declares that the "physical evidence proving the impossibility of the collision described by plaintiff was brought in by him. He is bound by it."
The foregoing argument is based on two propositions: (1) that plaintiff testified that the left rear wheel of his truck was on the south rail of the streetcar track or that the rear wheels were straddling the south rail at the time of the collision, and that he is conclusively bound by such testimony, and (2) that the physical facts developed by plaintiff in his case proved that the collision could not have occurred in the manner described by plaintiff in his own testimony. If the first proposition is not supported by the law and the evidence, then all of the above mentioned argument must fail. As to the law involved in defendant's first proposition, the courts of this state draw a distinction between the testimony of a party and that of a witness who is not a party in the case. A party is not conclusively bound by the adverse testimony of his witness, and he may, by other witnesses, or by his own testimony, show that the facts are otherwise than as stated by such witness. Talley v. Buchanan, 353 Mo. 912, 917, 185 S.W. 2d 23, 26. But a party's testimony on the stand as a witness may be of such a nature as to have the effect of a judicial admission which not only relieves the opponent from adducing evidence, but precludes the party himself from disputing it, either by his own testimony or by other witnesses. Wigmore, Evidence, sec. 2495a (3d Ed.). Thus, if a party in full possession of his mental faculties testifies unequivocally and understandingly to a material fact peculiarly within his own personal knowledge, which negatives his right of action or defense, he is precluded from relying upon any testimony to the contrary, unless he gives some reasonable explanation of his previous statement as having been the result of mistake, oversight, lapse of memory or misunderstanding. In the absence of such an explanation, the party may not have the benefit of any testimony which is contrary to his own testimony, whether given by himself, Steele v. Kansas City Southern R. Co., 265 Mo. 97, 175 S.W. 177, by his adversary's witnesses, Elkin v. St. Louis Public Service Co., 335 Mo. 951, 958, 74 S.W.2d 600, or by his own witnesses. Mollman v. St. Louis Public Service Co., Mo. App., 192 S.W.2d 618, 621, and cases cited. Where, however, the testimony of a party is not a positive statement of fact within his own knowledge, but is a mere testimate or opinion, it does not have the effect of a judicial admission. This is especially so as to the circumstances of an accident or similar event, because in such a case the party's testimony is subject to inexactness of observation and memory. See Kanopka v. Kanopka, 113 Conn. 30, 154 A. 144, 80 *748 A.L.R. 619, a leading case. Thus a party is not conclusively bound by his mere estimate of time, speed or distance, or the position of an automobile or train at the time of an accident. His testimony in regard to such matters does not preclude him from relying upon the more favorable testimony of other witnesses in the case, unless the testimony of the other witnesses is inconsistent with his theory of the case or contrary to physical facts. Dennis v. Wood, 357 Mo. 886, 211 S.W.2d 470, 471; State ex rel. Thompson v. Shain, 351 Mo. 530, 173 S.W.2d 406; Goggin v. Schoening, Mo. App., 199 S.W.2d 87, 92; Golden v. Onerem, Mo.App., 123 S.W.2d 617, 169 A.L.R. 798, 819.
Returning to plaintiff's testimony, he testified on direct examination that as he drove eastwardly on Twelfth Street his truck was straddling the south rail of the streetcar track, and continued: "A. The street car was about at Olive Street and I began to pull off, and before I could get clear of the track it hit the rear end on the left hand corner as near as I can tell, because I was knocked off the track and was unconscious for quite awhile. Q. Did you see the streetcar hit your truck or were you looking ahead trying to turn off? A. I was turning off." The substance of plaintiff's testimony on cross-examination is: "I claim I was pulling off the streetcar track * * * and was off the track, only one wheel was about on the track * * * when the streetcar hit the left rear end of the truck * * *. The left rear wheel was practically on the part of the track the streetcar hit, the left rear end of the truck. * * * One wheel was practically over the rail."
Defendant urges this court to construe plaintiff's testimony in the light most unfavorable to plaintiff and to hold that it placed the rear of the truck on or over the south rail and that plaintiff is conclusively bound by such testimony. This we cannot do. In the first place, the testimony is hardly susceptible of an interpretation that would justify taking the case from the jury, as defendant contends, for the usual meaning of the word "about" is "in contiguity or proximity to, near, not far from," and the plaintiff evidently believed that the words "about" and "practically" are synonyms. Even if we accept defendant's interpretation of the testimony, it is obvious that it was a mere estimate or opinion which did not have the effect of a judicial admission. Plaintiff's evidence showed that he was turning off the track at the time in question, and that he was rendered unconscious by the sudden collision. Under the circumstances, the plaintiff could not be expected to make an exact estimate of the location of the rear wheels of his truck at the moment of collision. See Kanopka v. Kanopka, 113 Conn. 30, 154 A. 144, 80 A.L.R. 619. We hold, therefore, in accordance with the cases cited above, that it was for the jury to determine the location of the rear of the truck at the time in question from all the evidence in the case. Defendant's contention concerning the physical facts developed by plaintiff need not be discussed in connection with this phase of the case because it is based on the premise, which we have rejected, that plaintiff's testimony committed him to the theory that the rear of the truck was on the track at the time of the collision.
Defendant also contends that "it is a physical certainty that the collision could have occurred only as described by defendant's witnesses." That is, when the streetcar was overtaking and passing the truck, the truck swerved to the left and then to the right and the back of the truck struck the right side of the streetcar. Defendant then asserts that the fact that there was no damage to the rear of the truck shows that the streetcar did not collide with the truck and, therefore, that plaintiff's theory of the case is so contrary to the physical facts and known physical laws as to be unbelievable. In this connection defendant cites a number of cases which hold that evidence must be disregarded when it is contrary to physical facts and to known physical laws. Benton v. St. Louis-San Francisco R. Co., Mo.Sup., 182 S.W.2d 61, 63; Murphy v. Fred Wolferman, Inc., 347 Mo. 634, 643, 148 S.W.2d 481, 485; Highfill v. Wells, Mo.Sup., 16 S.W.2d 100, 103; Sirounian v. Terminal R. R. Ass'n of St. Louis, 236 Mo.App. 938, 945, 160 S.W. *749 2d 451, 454; Bauer v. Wood, 236 Mo.App. 266, 270, 154 S.W.2d 356, 359; Freed v. Mason, Mo.App., 137 S.W.2d 673, 678. We have no quarrel with the rule as to physical facts, nor do we question the decisions in the cases cited, but the rule is not applicable here. We have searched the record and find no evidence to support the contention under discussion. Not a single witness testified as to the condition of the rear of the truck after the accident. It is true that plaintiff's Exhibit 6, a picture of the rear of the truck taken by police officers, does not show any marks or dents on the rear of the truck, but we cannot assume there were no marks or dents of any kind on the rear of the truck merely because they do not appear in the picture. Furthermore, if the projection on the streetcar struck the left rear of the truck, as plaintiff's evidence tends to show, it is possible the force was applied to a small area and might well leave little or no physical evidence. The mark on the streetcar shows the point of contact to have been very small. It is clear that the meager evidence concerning the condition of the truck does not warrant this court in holding as a matter of law that the streetcar did not collide with the rear of the truck.
It is next asserted that the testimony of Nettie Moore, a witness for plaintiff, that there was paint from the streetcar on the "left side, the left rear side" of the truck after the accident was a physical fact proving conclusively that the truck turned into the streetcar as stated by defendant's witnesses, and that if plaintiff contends the projection on the side of the streetcar hit the truck as it was being driven off the car track "it is a physical fact that the paint from the streetcar would have been on the rear of the truck and not along its side." Assuming that the testimony of Nettie Moore is unfavorable to plaintiff, as the defendant contends, the argument conflicts with the well known rule that the evidence must be viewed in the light most favorable to plaintiff; that the defendant's evidence must be disregarded except in so far as it may aid the plaintiff's case; that the plaintiff is entitled to the benefit of all favorable inferences arising from all the evidence; and that a motion for a directed verdict can be sustained only when the facts in evidence and the legitimate inferences drawn therefrom are so strongly against the plaintiff as to leave no room for reasonable minds to differ. Trower v. Missouri-Kansas-Texas Railroad Co., 347 Mo. 900, 908, 149 S.W.2d 792, 795. Furthermore, a party is not conclusively bound by the adverse testimony of his witness, and he may rely upon the more favorable testimony of other witnesses unless such other testimony is inconsistent with his theory of the case or contrary to the established physical facts. Talley v. Buchanan, supra. The two motormen testified that the front of the car had passed the left rear of the truck and was about even with the front of the truck when the collision occurred. Their testimony, as well as the testimony of two of the police officers called as witnesses by the plaintiff, was to the effect that the only damage to the streetcar was on the projection on the south side of the car. Plaintiff's witness Jesse Smart, a passenger on the streetcar, testified that the truck was turning off the track and gradually easing to the right when the projection on the car struck the left rear of the truck. We cannot disregard this testimony, which is favorable to plaintiff, unless it is contrary to the established physical facts. It has been said many times that "so frequently do unlooked for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other." Murphy v. Fred Wolferman, Inc., 347 Mo. 634, 643, 148 S.W.2d 481, 485; Young v. Missouri-Kansas-Texas Railroad Co., Mo.Sup., 100 S.W. 2d 929, 934. See also Wilson v. Kurn, Mo. Sup., 183 S.W.2d 553, 555; Golden v. Onerem, Mo.App., 123 S.W.2d 617, 621. Even if it be conceded that there was paint from the street car on the left side of the truck, we cannot say that such fact is "so clear and irrefutable" that "no room is left for the entertainment, by reasonable minds," *750 of any conclusion except the one urged by defendant that the truck was turned into the streetcar. The matter thus complained of by defendant was a matter of fact for the consideration of the jury.
Plaintiff's evidence was sufficient to justify the jury in finding that at the time of the collision his truck was off the track but close enough to be struck by a three or four inch projection on the south side of a passing streetcar; that while the truck was in that position the motorman on the car in question did attempt to pass it; and that the left rear part of the truck was struck by the projection on the south side of the streetcar as it was passing the truck. We hold, therefore, that the trial court did not err in refusing to sustain defendant's motions for a directed verdict and for judgment.
Defendant's second point is that plaintiff's testimony that his truck was straddling the south rail of the streetcar track as he drove eastwardly on Twelfth Street convicts him of contributory negligence as a matter of law. As plaintiff points out, this defense would seem to be an afterthought on defendant's part since it pleaded no such defense in its answer. Nevertheless, the defendant is "entitled to urge on this appeal that plaintiff's own evidence convicted him of contributory negligence as a matter of law, for if that were true, it would have destroyed plaintiff's cause of action, and nothing would have remained for submission." Hicks v. De Luxe Cab Co., Mo.App., 189 S.W.2d 152, 154, and cases cited.
Defendant contends that plaintiff's own testimony shows that he violated sec. 8385(b), R.S.Mo.1939, Mo.R.S.A., which provides that "all vehicles when in operation shall be kept as close to the right-hand side of the highway as practicable," and cites Melber v. Yourtee, Mo.Sup., 203 S.W.2d 727, 730, where the court said that "failure to comply with this statute is negligence per se." The court did not say that the driver of a vehicle must always keep close to the right-hand side of the highway. The court said that there were no cars parked on the street in question, and "so, in the circumstances, plaintiff's husband violated the rule of the road in driving astride the east rail of the streetcar track." The statute does not attempt to lay down rigid rules as to the distance which a vehicle must be kept from the right-hand side of the highway. Instead, all of the circumstances of the case, including the condition of the street and its relative freedom from other vehicles or its more or less crowded condition, must be considered in determining the position upon the street which the vehicle must occupy in order that the person driving it shall be free from negligence; and whether the driver of a vehicle failed to comply with the statute and, if so, whether such failure was a proximate cause of the injury are ordinarily questions of fact for the jury. Hamilton v. Patton Creamery Co., Mo.Sup., 222 S.W.2d 713; Stack v. General Baking Co., 283 Mo. 396, 223 S.W. 89; Roberts v. Atlas Life Ins. Co., 236 Mo.App. 1162, 163 S.W.2d 369; Smart v. Raymond, Mo.App., 142 S.W.2d 100. In the instant case the plaintiff did testify that he drove eastwardly on Twelfth Street with the wheels of his truck astride the south rail of the car track; but there is no evidence in the record showing whether vehicles were, or were not, parked along the south curb of Twelfth Street at the time. The photographs show that the truck had a wide bed. The space between the south rail of the streetcar track and the south curb of Twelfth Street was narrow (13 ½ feet), and if cars were parked against the south curb it is possible that plaintiff would have been forced to drive on or near the car track. Certainly, in the absence of any evidence as to the surrounding conditions at the time and place in question, this court cannot, as a matter of law, hold that plaintiff's evidence showed a violation of the statute, and that such violation was a proximate cause of the collision. This point must be ruled against defendant.
Defendant's third point is that the court erred in giving plaintiff's Instruction 1 because it is not supported by any evidence. Defendant says: "We have shown under our Point 1, supra, that the incontrovertible *751 physical facts show that the collision could not have occurred as testified to by plaintiff and as hypothesized in the instruction, and so there was no evidence on which to base the instruction." The instruction hypothesized the facts pleaded in the petition and developed by the evidence most favorable to plaintiff. Since we have discussed the sufficiency of the evidence to justify submission under Point 1 and have held that there is no merit in defendant's claim that no submissible case was made because the evidence is contrary to physical facts, it necessarily follows that the court did not err in giving plaintiff's Instruction 1.
Was the verdict excessive? The jury returned a verdict of $4500 for personal injuries, and $265 for property damage. Defendant contends that the verdict for personal injuries is excessive, but does not complain of the amount awarded plaintiff for the damage to his truck.
Plaintiff testified that he was unconscious for a short time after the collision; that immediately after the accident he had pains in his left leg, ankle and chest; that his left knee was injured and his left instep "knocked down"; that he was cut about the face and on the hands; that he wiped glass out of his face and that he was in such condition he couldn't walk. Plaintiff was taken to General Hospital No. 2 by ambulance. He testified that his left leg was there put in splints; that blood was drawn from his left knee; that his knee was then bandaged and his chest was taped. He left the hospital on crutches on September 17th, the second day after the collision. He used crutches for about four weeks and then used two canes for about six weeks thereafter. Plaintiff was in bed for almost two months after he left the hospital. He testified that his own physician, Dr. Thomas A. Jones, came to see him eight or ten times after he left the hospital, the last time in January, 1948; that Dr. Jones taped him up and ordered him to rest in bed as much as possible. Plaintiff's complaints at the time of the trial were that he was still suffering from pains in his back, chest, knee and ankle, and that he could not lift anything heavy.
Dr. Jones testified that he first saw plaintiff at the hospital on September 16, 1945; that examination disclosed a sprain of the lumbosacral area of the back; pain in the lower left chest and in the left hip, left knee, and left ankle; that the left leg was immobilized with splints for a very short time and then the knee had to be wrapped and the ankle bandaged; that adhesive was applied to the chest and back; that there was considerable tenderness in the places mentioned and some discoloration and inflammation, but no torn or skinned places on plaintiff's body. Perhaps the most swelling he noticed was about the knee and ankle. Plaintiff was treated at his home by Dr. Jones until October 20, 1945, and after that the doctor saw him frequently at his office, giving him medicine and strapping the injured areas. According to Dr. Jones' records, the last time he saw plaintiff professionally was on January 24, 1946, but the doctor testified he had seen plaintiff since that time and had given him some medicine. When the doctor last saw plaintiff for treatment, he was still complaining of pains in the areas mentioned above. Dr. Jones gave it as his opinion that plaintiff's injuries were caused by trauma; that plaintiff would "continue to feel, suffer, some effects from the pain, in the back and knee and ankle"; that it was questionable whether he would continue to suffer any chest pain.
Dr. William M. Korth, called as an expert witness for plaintiff, testified that he examined the plaintiff only once, on May 15, 1947, one year and eight months after the accident; that he found tenderness about the breast bone, or sternum, and that plaintiff complained of pain in the chest. The contusion of the chest was due to trauma. He found some tenderness in the abdomen in both lower quadrants. Examination of the back revealed tenderness and slight muscle spasm. The left knee was normal in size, with no swelling, but there was tenderness in the region of the left kneecap. X-rays showed a slight curvature of the lower spine to the left and a slight roughening along the back of the left kneecap. It was the doctor's conclusion that plaintiff had a minimal misalignment *752 of the lower spine with arthritis of the fifth lumbar vertebrae, and that there was an arthritic condition in the area of the left knee. The doctor testified that the arthritic condition had existed for many years before the accident; that trauma had aggravated this condition and made it more difficult to cure. It was the doctor's opinion that the aggravated conditions he described were permanent and that the accident was the cause of plaintiff's present complaints.
The question of the amount of compensation for injuries of this character is not subject to specific measurement. Each case must be considered on its own facts, giving some consideration to economic conditions existing when the verdict is returned and having due regard to the maintenance of reasonable uniformity of awards for similar injuries. Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 823, 211 S.W.2d 35, 44. The determination of the amount of the damages sustained is, of course, primarily for the jury, and in this case the verdict has been approved by the trial court. The appellate court should not interfere unless the verdict is so large as to offend against all sense of right. Considering the evidence in the light most favorable to plaintiff, we cannot say that the verdict is manifestly excessive.
The judgment should be affirmed.
SPERRY, C., concurs.
PER CURIAM.
The foregoing opinion of BOUR, C., is adopted as the opinion of the court.
The judgment is affirmed.
All concur.