## GULF, MOBILE & OHIO R. CO. v. WILLIAMSON.

No. 14321.

United States Court of Appeals Eighth Circuit.

Oct. 24, 1951.

Rehearing Denied Nov. 14, 1951.

Wayne Ely, St. Louis, Mo. (Robert C. Ely, St. Louis, Mo., and D. S. Wright, Mobile, Ala., on brief), for appellant.

John H. Lashly, St. Louis, Mo. (Lashly, Lashly, & Miller, St. Louis, Mo., on brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

GARDNER, Chief Judge.

This is an appeal from a judgment in favor of plaintiff entered on a jury verdict in an action to recover damages for personal injuries sustained by appellee in a collision between his automobile and appellant's railroad train at a grade crossing at a point about one-quarter of a mile south of Percy, Illinois. We shall refer to the parties as they appeared in the trial court.

In his complaint plaintiff alleging that he was in the exercise of due care for his safety, charged that he was struck with great force by a railroad coal car which was being backed across a railroad crossing intersecting a public highway about one-fourth of a mile south of Percy, Illinois. The acts of negligence which are here relied on were that defendant negligently failed to remove from its right of way all brush, shrubbery and trees for a distance of 500 feet in either direction from the highway crossing involved, and in failing to maintain sign boards at the crossing as required by the laws of Illinois.

Defendant in its answer admitted the happening of the accident but denied all allegations of negligence and pleaded contributory negligence on behalf of plaintiff.

The accident happened about 3:30 o'clock on the afternoon of November 22, 1947, while plaintiff, accompanied by his father-in-law, was driving his Ford automobile southward on a country road near Percy, Illinois. At the close of all the evidence defendant moved for a directed verdict on the grounds that: (1) the evidence was insufficient to prove that defendant was guilty of any negligence proximately causing plaintiff's injuries; (2) the evidence conclusively showed that plaintiff was not in the exercise of ordinary care for his own safety but that he was guilty of negligence as a matter of law, directly contributing to his injuries. The motion was overruled and the case submitted to the jury on instructions to which defendant saved certain exceptions, hereafter to be noted.

Defendant in seeking reversal contends that (1) the court erred in overruling its motion for a directed verdict; (2) the court erred in overruling defendant's motion to

declare a mistrial when plaintiff testified that defendant's attorney and claim agent asked him if he wanted to settle his claim; (3) the court erred in charging the jury that it might find that the defendant had violated the laws of Illinois with reference to maintaining warning signs at the highway crossing; (4) the court erred in overruling defendant's motion for judgment notwithstanding the verdict.

In our view of the record the controlling issue is whether or not the court should have sustained defendant's motion for a directed verdict. In considering that question we must be governed by the substantive law of the State of Illinois, where the accident occurred. The jury having returned a verdict in favor of plaintiff we must consider as proved all facts which the evidence reasonably tended to prove and he is entitled to the benefit of all inferences which may reasonably be drawn from the facts proven and he is entitled to have the evidence viewed in a light most favorable to him, and if when so considered fair-minded men might reasonably reach different conclusions as to the material facts, then the issue should not be determined as a matter of law but should be submitted to the jury to determine the facts. Stephenson v. Steinhauer, 8 Cir., 188 F.2d 432; Railway Express Agency v. Mackay, 8 Cir., 181 F.2d 257; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. Under the law of Illinois it was incumbent upon plaintiff in presenting his case to prove that he was in the exercise of due care for his own safety and was not himself guilty of negligence contributing to the accident resulting in his injuries.

By Chapter 111⅔, Section 62, Illinois Revised Statutes, 1947, it is provided that every railroad corporation operating within the State of Illinois is required to remove from its right of way at all grade crossings all brush, shrubbery and trees for a distance of not less than 500 feet in either direction from every grade crossing. By Chapter 114, Section 58, Illinois Revised Statutes, 1949, it is provided that every railroad corporation operating within the State of Illinois shall cause railroad crossing signs to be placed and constantly maintained at public crossings, which must be elevated so as to be easily seen by travelers and on each side of the warning sign shall be placed in capital letters, of at least the size of nine inches each, the words "Railroad Crossing", or "Look Out For The Cars."

Perhaps it should here be stated that at the close of the trial counsel for defendant frankly admitted negligence on the part of the defendant. This is shown by the record which reproduces excerpts from the argument of counsel for defendant. In the course of his argument counsel said:

"I'm going to grant you that the railroad company didn't comply with the law. I'm not trying to pull any wool over your eyes or any brush out of the field; it's there, and it shouldn't have been there. There's no question about it. I'm not even trying to convince you that that wasn't true. I do think the sign was perfectly all right. I think you will agree that it was. That brush should not have been there. But that is not the deciding factor in this lawsuit.

"Under the laws of Illinois, Mr. Lacy Williamson was charged with a positive duty, and he can not rely on the negligence of someone else unless he himself is free. He has got to be free of negligence, clear of negligence, exercising the degree of care, not that John would exercise, when he is strolling along the country highway, maybe not that I would or you would, but the care that you should, not you would, but that you should exercise when you are approaching a railroad track. *Now, that is the whole proposition in a nutshell*". (Italics supplied).

From the evidence construed most favorably to the plaintiff we think the jury might properly have believed that on the occasion in question plaintiff was driving his automobile in a southerly direction at the speed of twenty to twenty-five miles per hour. It was a dark, overcast, gloomy and chilly day. The windows of his automobile were closed. He knew that in 1936 or 1937 defendant had built a new spur track across this country road upon which he was driving but he was not familiar with the crossing and did not know the place at which defendant's spur track crossed the highway. He had been over the highway only once

after the spur track had been built and he thought it was some 500 feet farther south than its actual location. As plaintiff approached the railroad crossing there was dog grass and saplings on the west or right side of the road on which he was traveling. The dog grass was from six to ten feet high and the saplings were still higher. There was underbrush right up to the edge of the road. There was a fence on the west side of the highway about ten feet from the right edge of the road, and there were leaves on the trees inside the fence. There was also a fence along the north side of the defendant's right of way, about twenty-five feet from the spur track. The railway fence and the one along the west side of the highway came together in a corner and there were saplings, small trees and shrubs in the corner created by the two fences. There were blackjack oak trees about twenty-five to thirty feet tall right up to the corner of the fence. The leaves were still on the trees and there were saplings, grass and shrubs about fifteen or twenty feet high on defendant's right of way between the fence on the north side and the track proper. There was a railroad crossing sign on the right side of the highway as plaintiff approached the crossing from the north. The wooden post which supported the crossing sign was very brown and weatherbeaten, and of a drab color so that it blended with the foliage on the side of the road. It leaned to the west away from the highway, and was about six or eight feet from the highway. It was unpainted. The crossarms were rusted, while the crossing sign on the southeast corner of the crossing was down on the ground and had been down there for a number of years. Plaintiff's view of the crossing sign was completely obscured by leaves hanging on the blackjack oak trees. The surface of the ground where the defendant's track crossed the highway was three or four feet higher than it was at a point twenty to twenty-five feet north of the crossing and from the latter point the highway had been graded up in a gradual rise to the spur track. At the crossing the highway was level and then a small dip and

then another rise in the road as it continued south.

Plaintiff, as he drove toward the crossing, which he did not know was there but thought was 500 feet farther on, was looking straight down the road, not looking for anything on either side of the road. He could see the rise in the road where the track was but it looked to him like the rest of the surrounding country, which was all torn up with strip mine fills and spoil banks. From his position it was impossible for him to see the rails of the spur track because the crossing was higher than where he was. When plaintiff's automobile reached a point estimated by him to be from twenty to thirty feet from the railroad crossing, his father-in-law, who was riding with him, exclaimed, "Oh my God, man, we're hit!" Plaintiff then looked up and saw the back end of a low-sided coal car. He estimated that the end of the car was approximately the same distance from the crossing of the railroad as he was from the crossing on the highway. The minute he looked up he was so startled that he paused for a few seconds and thought it would not be possible for him to take his foot off the accelerator and put it on the brake without stopping dead on the track so he put his foot on the accelerator and tried to make it across in front of the train. The train consisted of ten or twelve low coal cars pushed ahead of the engine. Plaintiff's automobile was struck and pushed some considerable distance, landing on the south side of the railroad track. Plaintiff did not hear a whistle nor a bell but there was evidence that the whistle was sounded. The whistle and bell were, of course, on the locomotive which was not hauling the twelve cars but pushing them so that the engine was at the west end of these twelve cars, approximately 750 feet from the east end of the train, when the whistle was blown and the bell sounded.

■ Certain photographs offered by defendant and received in evidence, are claimed to show conclusively that plaintiff had he been in the exercise of due care, could have seen the crossing sign and the tracks at the crossing. It should first be observed that these photographs were taken

two years after the accident occurred. They were taken on a clear, sunshiny day, whereas at the time of the accident the weather was dark, overcast and gloomy. The pictures were taken at the direction of a representative of the defendant from positions selected by him and counsel admitted that pictures had been taken of the scene of the accident at or near the time it occurred but they were not offered in evidence. The oral evidence was to the effect that the foliage was on the trees, bushes and shrubbery on the day of the accident and we must know judicially that the foliage varies greatly from season to season, and the condition of the foliage in this case is a very material matter. The photographs were in the discretion of the court admissible as aids to the jury in applying the evidence relating to the situation at this crossing but certainly under the circumstances shown they were not conclusive but merely secondary evidence as to the physical facts purporting to be reflected by them, nor were they conclusive proof of plaintiff's contributory negligence.

In Chicago, G. W. R. Co. v. Robinson, 8 Cir., 101 F.2d 994, 997, photographs were admitted in evidence. Concerning them the jury was instructed as follows: " ' * * * It is for you gentlemen of the jury to say from the evidence, what was visible to the enginemen at the time of the accident remembering that you are to judge by what the human eyes of the enginemen saw or could have seen by the use of reasonable care under the circumstances, and that the eyes of the camera or the lenses, as we call them, and the film on which the impressions are made and developed are not necessarily the real test of what the human eyes would have or did see by the use of ordinary care.' "

In affirming the ruling of the court we said: "We think there was no error in view of the instruction in admitting the photographs in evidence."

See, also: Bretall v. Missouri Pac. R. Co., Mo.App., 239 S.W. 597; Haven v. Snyder, 93 Ind.App. 54, 176 N.E. 149; Higgs v. Minneapolis, St. P. & S. S. M. R. Co., 16 N.D. 446, 114 N.W. 722, 723, 15 L.R.A.,N.S., 1162.

In Bretall v. Missouri Pac. R. Co., supra, which was an action to recover damages for the destruction of an automobile in a collision with a train at a public crossing, the court held photographs admissible but not conclusive. In the course of the opinion it is said [239 S.W. 599]:

"It can not be successfully urged that photographs of the location and surrounding conditions of the place of the accident are per se evidence of contributory negligence. The photographs, when properly identified, may go only to the weight of the evidence, and are not conclusive, but only illustrative of other testimony."

In Haven v. Snyder, supra [93 Ind.App.: 54, 176 N.E. 152], the court said: "It is to be remembered that photographs are not conclusive to such an extent that evidence in conflict with them will be ignored. They are no more conclusive of physical facts than the testimony of witnesses. It is for the jury to determine their weight and reliability by the same test used in weighing other evidence."

On this phase of the case we conclude that these photographs did not have the effect of superseding or nullifying all the oral testimony with reference to the conditions existing in the vicinity of this crossing at the time of the accident.

It is urged, however, that the testimony of plaintiff established that after he discovered his peril he could have avoided the collision. This is based upon the fact that in a part of his testimony plaintiff estimated the distance between his automobile and the track when he first became aware of the approaching train as thirty feet and that he was operating his car at from ten to twenty-five miles an hour and that he estimated that he could have stopped the car between ten and twenty-five feet had he applied his brakes. While ordinarily a party may be conclusively bound by admissions made by him against his interest, it is here apparent that these were merely estimates made by him. But if he were going twenty-five miles an hour and could have stopped in twenty-five feet he would still have been in collision with the train if he first discovered the train

at a distance of less than twenty-five feet. There are, we think, two answers to this argument. The first is that plaintiff's testimony itself varied from time to time in estimating these distances and speeds. He testified that he realized that it would not be possible for him to take his foot off the accelerator and put it on the brake without stopping dead on the track. At one place he states that when he saw the train he was twenty or twenty-five feet from the crossing. There was evidence by the witness Miller, a witness for defendant, who saw plaintiff's car approaching the crossing, that when about ten feet from the track he saw it "kind of stop, jump again and come on." Plaintiff's testimony in this regard being mere estimates, he was not concluded thereby. Haddow v. St. Louis Public Service Co., Mo.App., 38 S.W.2d 284; State ex rel. Thompson v. Shain, 351 Mo. 530, 173 S.W.2d 406; Mathis v. Tutweiler, 6 Cir., 295 F. 661. But we think there is still a further answer to this argument. Plaintiff was suddenly confronted with an unexpected peril and the prudence or propriety of an act is not to be judged by the event but by the circumstances under which it was done. In an emergency where one is confronted with sudden peril and he is required to choose between methods under the stress of nervous excitement produced by the peril which confronts him, he is not expected to act with the coolness and precision which under other circumstances would be considered an essential of due care. It is the law that one may not be expected to exercise the same degree of judgment in an emergency wherein his personal safety is threatened as in a situation where he is not subject to the fear of sudden disaster. Even a prudent man confronted with unexpected danger may fail to use the best judgment or may omit some precaution he might have taken, and may not use the best available method of meeting the danger. Davis v. Chicago, R. I. & P. Ry. Co., 8 Cir., 159 F. 10, 16 L.R.A.,N.S., 424; Gratiot v. Missouri Pac. Ry. Co., Mo.Sup., 16 S.W. 384, 16 L.R.A. 189; Lincoln Rapid Transit Co. v. Nichols, 37 Neb. 332, 55 N.W. 872, 20 L.R.A. 853; Union Pacific R. Co. v. Mc-

Donald, 152 U.S. 262, 14 S.Ct. 619, 38 L. Ed. 434; Stack v. East St. Louis & Suburban R. Co., 245 Ill. 308, 92 N.E. 241; Douglas v. Wabash Ry. Co., 149 Ill.App. 612; Hines v. Smith, Tex.Civ.App., 235 S.W. 654.

There can be no doubt under the evidence that plaintiff was acting under excitement caused by being confronted with sudden peril. He did not deliberately attempt to cross ahead of the defendant's train but under the evidence the jury may well have believed that he arrived at a position of peril before he became cognizant of the approach of the moving train and in his effort to escape injury in the emergency with which he was confronted he attempted to cross over the crossing. In these circumstances it can not be said as a matter of law that he was guilty of contributory negligence.

It is suggested by defendant that this theory is not now available to plaintiff because the case was not tried upon that theory. This rule, while it may be invoked by an appellee, is not available to an appellant. All intendments must be indulged in favor of the correctness of the judgment appealed from and if the conclusion reached by the court was a correct one it is not material by what process that conclusion was reached.

In support of its contention that plaintiff was guilty of contributory negligence as a matter of law defendant relies largely upon the case of Gately v. Chicago & E. I. R. Co., 7 Cir., 138 F.2d 222, 226. But in that case the plaintiff, a switchman, actually knew that an engine was approaching and the court very properly held that the accident was the result of his own failure to exercise ordinary care because he stepped in front of the engine. In that case it is observed that the court said: "In reaching this conclusion, it would serve no good purpose to discuss the numerous cases cited by the plaintiff wherein it has been held that a jury question was presented. It may be said of such cases generally, and perhaps specifically, that in each of them there were unusual circumstances which interfered with plaintiff's view, such

obstructions, curves in the track, darkness, smoke, etc. Under such circumstances, it was left to the jury to determine whether plaintiff's failure to recognize the danger at hand amounted to contributory negligence."

In the instant case there was substantial evidence of obstructions to the view and the weather was dark, overcast and gloomy.

In Bocock v. Wabash R. Co., 7 Cir., 171 F.2d 834, 836, a case arising in Illinois, the facts tending to show contributory negligence were much stronger than in the instant case. In that case plaintiff sought to recover damages for personal injuries sustained as the result of a collision between his automobile and the defendant's freight train at a railroad crossing. At the close of the testimony defendant moved for a directed verdict on the ground, among others, that the plaintiff was guilty of contributory negligence. Plaintiff was a rural mail carrier who had been driving over this same route for about fourteen years and was thoroughly familiar with the crossing. Visibility on the day of the collision was poor. On each side of the crossing the highway was graded and the crossing was nine or ten feet above the level of the highway which crossed at right angles. The approach was on a steep grade. The view was slightly obstructed by trees and buildings. Plaintiff knew of the train and knew that it was due at 8:30 a. m., but was always late. He testified that on the morning of the collision he approached the crossing about 10:30 a. m., driving north at a speed of between fifteen and twenty miles an hour; that when about 150 feet south of the crossing he glanced momentarily to the east but saw no train and heard no bell or whistle. He then shifted gears and moved onto the crossing. The trial court ruled that plaintiff was not guilty of contributory negligence as a matter of law. In affirming the trial court on this issue the court said: "He (the trial judge) analyzed the evidence in this respect and concluded, rightly we think, that a jury question was presented and that he could not therefore render judgment notwithstanding the verdict as to this issue."

It is argued that plaintiff carelessly drove upon the crossing in reckless disregard of the crossing sign, the blowing of the whistle and the ringing of the bell. The jury presumably found that the crossing sign was obscured by the leaves and overhanging trees. The railroad track to the west of the crossing was obscured by the tall grass, trees and shrubbery. As to the sounding of the whistle and the ringing of the bell, while the jury was bound to believe they had been sounded, yet as bearing on the question of plaintiff's negligence they were at liberty to find that he did not and could not hear them. The atmospheric conditions were not conducive to the conduct of sound. The locomotive was at the west end of the train, far removed from the crossing. It was enveloped in a mass of intervening shrubbery, tall grass and trees so that the jury might well have believed that the sound did not reach plaintiff. The atmospheric conditions not only affected visibility but may well have affected the transmission of sound.

The question of due care on the part of the plaintiff is a question for the jury where there is any evidence which, with any legitimate inference that may be drawn therefrom, tends to show the use of due care. This, we believe, is the rule announced by the Supreme Court of Illinois in Greenwald v. Baltimore & Ohio R. Co., 332 Ill. 627, 164 N.E. 142, which is relied on by defendant. Tested by this rule we think the question of plaintiff's contributory negligence was one of fact to be submitted to the jury and hence there was no error in denying defendant's motion for a directed verdict.

During the course of his direct testimony plaintiff stated: "and shortly after that, Mr. Stewart from Murphysboro came up and wanted to know if I wanted to settle. I said, 'No, there's something wrong with my neck, and I don't care to talk settlement to you until I know more of my condition.'" Defendant immediately asked for a mistrial which was denied and this ruling is here urged as ground for reversal. In interposing this motion for a mistrial

counsel for defendant stated: "I know Mr. Williamson didn't mean any impropriety at all. I am sure he didn't." The trial court overruled defendant's motion but reprimanded plaintiff for making the statement, ordered the testimony stricken, and at once told the jury to disregard it completely. We think the contention that this was prejudicial error is wholly without merit. The evidence was not offered in bad faith and the jury presumably followed the instruction of the court to disregard it.

■ It is finally urged that the court committed prejudicial error in instructing the jury that the law of Illinois required that defendant have on its crossing signs, painted in capital letters, the words "Railroad Crossing," or the words "Look Out For The Cars." The instruction as given was in the language of the statute, Chap. 114, Sec. 58, Ill.Rev.Stat.1949. We think the instruction was correct as given.

The judgment appealed from is therefore affirmed.